ORIGINAL

Susan E. Firtch, State Bar No. 154624
BURNHAM BROWN
A Professional Law Corporation
P.O. Box 119
Oakland, California 94604
---
1901 Harrison Street, 11th Floor
Oakland, California  94612
Telephone:     (510) 444-6800
Facsimile:     (510) 835-6666

E-mail:     sfirtch@burnhambrown.com

Attorneys for Defendants
JOHN HANCOCK LIFE INSURANCE CO.; JOHN
HANCOCK VARIABLE LIFE INSURANCE CO.; JOHN
HANCOCK FUNDS, INC.; JOHN HANCOCK FUNDS
LLC; JOHN HANCOCK SIGNATURE SERVICES, INC.;
JOHN HANCOCK FINANCIAL SERVICES, INC.;
SIGNATOR INVESTORS, INC.; JOHN HANCOCK

FILED

07 JUL 24  PM 12: 06

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

07 CV 1345 DMS (BLM)

| | |
|---|---|
| REBECA PALERMINO,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE CO., a Massachusetts Corporation formerly known as JOHN HANCOCK MUTUAL LIFE INSURANCE CO.; JOHN HANCOCK VARIABLE LIFE INSURANCE CO., a Massachusetts Corporation; JOHN HANCOCK FUNDS, INC., a Delaware Corporation; JOHN HANCOCK FUNDS LLC; JOHN HANCOCK SIGNATURE SERVICES, INC., a Delaware Corporation formerly known as JOHN HANCOCK INVESTOR SERVICES, INC. AND JOHN HANCOCK FUND SERVICES, INC.; JOHN HANCOCK FINANCIAL SERVICES, INC., a Delaware Corporation; SIGNATOR INVESTORS, INC., a Delaware Corporation formerly known as JOHN HANCOCK DISTRIBUTORS, INC.; JOHN HANCOCK, a business of unknown form; and DOES 1-100, Inclusive,<br><br>Defendants. | Action No. _____<br>[San Diego County Superior Court, Action No. 37-2007-00067531-CU-IC-CTL]<br><br>DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO.'S; JOHN HANCOCK VARIABLE LIFE INSURANCE CO.'S; JOHN HANCOCK FUNDS, INC.'S; JOHN HANCOCK FUNDS LLC'S; JOHN HANCOCK SIGNATURE SERVICES, INC.'S; JOHN HANCOCK FINANCIAL SERVICES, INC.'S; SIGNATOR INVESTORS, INC.'S AND JOHN HANCOCK'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)<br><br>BY FAX |

CR

1
DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO., ET AL.'S NOTICE OF
REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)        No. _____

1   TO    THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

2   THE SOUTHERN DISTRICT OF CALIFORNIA:

3          PLEASE TAKE NOTICE that Defendants John Hancock Life Insurance Co., John

4   Hancock Variable Life Insurance Co., John Hancock Funds, Inc., John Hancock Funds, LLC,

5   John Hancock Signature Services, Inc., John Hancock Financial Services, Inc., and Signator

6   Investors, Inc. and John Hancock, a business of unknown form, (collectively referred to as "John

7   Hancock") hereby removes to this Court the state action described below:

8          1.     On or about May 30, 2007, Plaintiff Rebeca Palermino ("Plaintiff") filed an

9   action against John Hancock in San Diego County Superior Court, Case No. 37-2007-

10   00067531-CU-IC-CTL ("Plaintiff's Complaint")(attached as Exhibit A).

11         2.     Plaintiff's Complaint alleges facts related to and concerning the payment of

12   insurance proceeds relating to three John Hancock policies of insurance.  Plaintiff alleges that

13   she is the intended beneficiary of the proceeds of the John Hancock policies and that the

14   policies' proceeds were erroneously paid to another.  Plaintiff alleges causes of action against

15   John Hancock based on negligence, breach of fiduciary duty, fraud, negligent

16   misrepresentation, breach of contract, and violation of the covenant of good faith and fair

17   dealings.

18         3.     Plaintiff alleges in her complaint that she seeks compensatory damages in

19   excess of $175,000, punitive damages, pre-judgment interest and costs of suit.

20         4.     The first date upon which John Hancock received a copy of said complaint was

21   on June 25, 2007.

22         5.     On July 23, 2007, John Hancock filed an answer to Plaintiff's complaint in the

23   San Diego Superior Court, a true and correct copy of which is attached hereto as Exhibit B.

24   Plaintiff's complaint and John Hancock's answer are the only pleadings that have been filed in

25   the state court action at the time of the removal.

26         6.     As alleged in Paragraph 1 of Plaintiff's Complaint, Plaintiff is a competent adult

27   residing in San Diego County, California.

28         7.     John Hancock Life Insurance Company is and was a Massachusetts Corporation

1   with its principal place of business in Boston, Massachusetts.

2        8.      John Hancock Variable Life Insurance Company is and was a Massachusetts

3   Corporation with its principal place of business in Boston, Massachusetts.

4        9.      John Hancock Funds, Inc. was a Delaware Corporation with its principal place

5   of business in Boston, Massachusetts.

6        10.     John Hancock Funds, LLC is and was a Delaware limited liability company

7   with its principal place of business in Boston, Massachusetts.

8        11.     John Hancock Signature Services, Inc. is and was a Delaware Corporation with

9   its principal place of business in Boston, Massachusetts.

10       12.     John Hancock Financial Services, Inc. is and was a Delaware Corporation with

11  its principal place of business in Wilmington, Delaware.

12       13.     Signator Investors, Inc. is and was a Delaware Corporation with its principal

13  place of business in Boston, Massachusetts.

14       14.     Plaintiff has named as a defendant "John Hancock, a business form unknown."

15  John Hancock does not know what John Hancock entity Plaintiff is trying to name as a

16  defendant in her complaint based on this designation and thus is unable to set forth the state of

17  domicile or principal place of business for this defendant as named by Plaintiff.  There is,

18  however, no entity within the John Hancock family of companies providing insurance and

19  financial services that is either domiciled in California or has its principal place of business in

20  California.

21                              **JURISDICTION**

22       15.     At the time this action was commenced, and at all times subsequent thereto, the

23  parties are and have been citizens of different states; the Plaintiff being a citizen of the State of

24  California, and John Hancock being a citizen of the State of Massachusetts and the State of

25  Delaware.  This action is a civil action for which this Court has original jurisdiction under 28

26  U.S.C. section 1332, and is one which may be removed to this Court by Defendant pursuant to

27  the provisions of 28 U.S.C. section 1441(b), in that this is a civil action between citizens of

28  different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest

DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO., ET AL.'S NOTICE OF           No. _____
REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1   and costs.

2       16.    This action being properly within this Court's original jurisdiction under 28

3   U.S.C. section 1332, this Court may declare the rights and other legal relations of interested

4   parties in a case of actual controversy, pursuant to 28 U.S.C. sections 2201(a) and 2202.

5       17.    This Notice of Removal is timely filed under 28 U.S.C. 1446(b) in that it is filed

6   within thirty (30) days of John Hancock having received a copy of the complaint on June 25,

7   2007.

8       18.    Defendant's Notice to Adverse Parties of Removal to Federal Court is being

9   contemporaneously filed in San Diego County Superior Court, Case No. 37-2007-00067531-

10  CU-IC-CTL.

11      WHEREFORE, Defendants pray that the above-entitled action, currently pending in the

12  Superior Court of California, be removed to the United States District Court for the Southern

13  District of California and that this action proceed in this Court as a properly removed action.

14

15  DATED: July **23**, 2007             BURNHAM BROWN

16

17                           By *Susan E. Firtch*

18                           SUSAN E. FIRTCH
                         Attorneys for Defendant

19                           JOHN HANCOCK LIFE INSURANCE CO.;
                         JOHN HANCOCK VARIABLE LIFE

20                           INSURANCE CO.; JOHN HANCOCK FUNDS,
                         INC.; JOHN HANCOCK FUNDS LLC; JOHN

21                           HANCOCK SIGNATURE SERVICES, INC.;
                         JOHN HANCOCK FINANCIAL SERVICES,

22                           INC.; SIGNATOR INVESTORS, INC.; JOHN
                         HANCOCK

23

24  814424

25

26

27

28

                                      4
DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO., ET AL.'S NOTICE OF     No. _____
REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1441(b) (DIVERSITY)

1

**INDEX OF EXHIBITS**

2    A.    Summons/Complaint – Superior Court of California, County of San Diego Case

3          No. 37-2007-00067531-CU-IC-CTL

4    B.    Answer to Plaintiff's complaint filed by John Hancock Life Insurance Co., et al.

5          in Superior Court of California, County of San Diego Case No. 37-2007-

6          00067531-CU-IC-CTL

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

No. _____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT A**

1

FILED
CIVIL BUSINESS OFFICE

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

2007 MAY 30 P 2: 23

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
SEE ATTACHMENT 1 TO SUMMONS

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
REBECA PALERMINO

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Superior Court of California, County of San Diego, Hall of Justice
330 West Broadway, San Diego, CA 92101

CASE NUMBER:
*(Número del Caso):*
37-2007-00067531-CU-IC-CTL

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William E. O'Nell, Esq. (SBN185756), Law Office of William E. O'Nell
101 West Broadway, Suite 810, San Diego, CA 92101; Tel: (619) 702-7636; Fax: (619) 702-7639

| DATE: MAY 3 0 2007 | Clerk, by M. McKinley | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
American LegalNet, Inc. | www.USCourtForms.com

MC–025

| SHORT TITLE: Palermino v. John Hancock Life Insurance Co., et al. | CASE NUMBER: |

**ATTACHMENT** (Number): 1 to Summons    Page __2__ of __2__

*(This Attachment may be used with any Judicial Council form.)*    *(Add pages as required)*

JOHN HANCOCK LIFE INSURANCE CO., a Massachusetts Corporation formerly known as JOHN HANCOCK MUTUAL LIFE INSURANCE CO.; JOHN HANCOCK VARIABLE LIFE INSURANCE CO., a Massachusetts Corporation; JOHN HANCOCK FUNDS, Inc., a Delaware Corporation; JOHN HANCOCK FUNDS, LLC, a Delaware LLC; JOHN HANCOCK SIGNATURE SERVICES, INC., a Delaware Corporation formerly known as JOHN HANCOCK INVESTOR SERVICES, INC. AND JOHN HANCOCK FUND SERVICES, INC.; JOHN HANCOCK FINANCIAL SERVICES, INC., a Delaware Corporation; SIGNATOR INVESTORS, INC., a Delaware Corporation formerly known as JOHN HANCOCK DISTRIBUTORS, INC.; JOHN HANCOCK, a business of unknown form; and DOES 1-100, Inclusive

*(If the item that this Attachment concerns is made under penalty of perjury, all statements in this Attachment are made under penalty of perjury.)*

Form Approved for Optional Use
Judicial Council of California
MC-025 (Rev. January 1, 2007)

**ATTACHMENT**
**to Judicial Council Form**

www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

1  William E. O'Nell, Esq. (185756)
   LAW OFFICE OF WILLIAM E. O'NELL
2  101 West Broadway, Suite 810
   San Diego, CA 92101
3  Telephone: (619) 702-7636
   Facsimile: (619) 702-7639
4
   Attorney for Plaintiff Rebeca Palermino
5

6

7

8           IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9           IN AND FOR THE COUNTY OF SAN DIEGO, CENTRAL DISTRICT

10

11  REBECA PALERMINO,                    CASE NO.: 37-2007-00067531-CU-IC-CTL

12           Plaintiff,                  COMPLAINT FOR:

13  vs.                                  (1) NEGLIGENCE;
                                         (2) BREACH OF FIDUCIARY DUTY;
14  JOHN HANCOCK LIFE INSURANCE CO.,     (3) FRAUD;
    a Massachusetts Corporation formerly known   (4) NEGLIGENT
15  as JOHN HANCOCK MUTUAL LIFE              MISREPRESENTATION;
    INSURANCE CO.; JOHN HANCOCK          (5) BREACH OF CONTRACT; AND
16. VARIABLE LIFE INSURANCE CO., a       (6) VIOLATION OF THE
    Massachusetts Corporation; JOHN          COVENANT OF GOOD FAITH
17  HANCOCK FUNDS, Inc., a Delaware          AND FAIR DEALING
    Corporation; JOHN HANCOCK FUNDS,
18  LLC, a Delaware LLC; JOHN HANCOCK
    SIGNATURE SERVICES, INC., a Delaware
19  Corporation formerly known as JOHN   DEMAND FOR JURY TRIAL
    HANCOCK INVESTOR SERVICES, INC.
20  AND JOHN HANCOCK FUND SERVICES,
    INC.; JOHN HANCOCK FINANCIAL
21  SERVICES, INC., a Delaware Corporation;
    SIGNATOR INVESTORS, INC., a Delaware
22  Corporation formerly known as JOHN
    HANCOCK DISTRIBUTORS, INC.; JOHN
23  HANCOCK, a business of unknown form;
    and DOES 1-100; Inclusive,
24
             Defendants.
25

26                      DEMAND FOR JURY TRIAL

27       Plaintiff demands trial by Jury.

28  ///

                         COMPLAINT
                             1                    Palermino v. John Hancock, et al.

## COMPLAINT

Plaintiff, REBECA PALERMINO, for causes of action against the Defendants, and each of them, alleges:

**Parties**

1.  Plaintiff, at all times relevant herein, is and was a competent adult residing in San Diego County, California.

2.  Plaintiff is informed and believes that, at all times relevant herein, Defendant, John Hancock Variable Life Insurance Company ("JH Variable"), is and was a Massachusetts Corporation doing business in San Diego County, California.

3.  Plaintiff is informed and believes that, at times relevant herein, Defendant, John Hancock Mutual Life Insurance Company ("JH Mutual"), is and was a Massachusetts Corporation doing business in San Diego County, California.  Plaintiff is informed and believes that JH Mutual changed its name to, and is the same entity as John Hancock Life Insurance Company ("JH Life") and/or JH Life is the successor in interest and/or alter ego of JH Mutual.

4.  Plaintiff is informed and believes that, at all times relevant herein, Defendant, John Hancock Funds, Inc. ("JH Funds Inc."), is and was a Delaware Corporation doing business in San Diego County, California.

5.  Plaintiff is informed and believes that, at all times relevant herein, Defendant, John Hancock Funds LLC ("JH Funds LLC"), is and was a Delaware LLC doing business in San Diego County, California.

6.  Plaintiff is informed and believes that, at all times relevant herein, Defendant, John Hancock Signature Services, Inc. ("JHSS"), is and was a Delaware Corporation doing business in San Diego County, California which was formerly known as John Hancock Investor Services, Inc. and as John Hancock Fund Services, Inc.

7.  Plaintiff is informed and believes that, at all times relevant herein, Defendant, John Hancock Financial Services, Inc. ("JH Financial"), is and was a Delaware Corporation doing business in San Diego County, California.

8.  Plaintiff is informed and believes that, at times relevant herein, Defendant, John

1 | Hancock Distributors, Inc. ("JH Distributors"), is and was a Delaware Corporation doing
2 | business in San Diego County, California.  Plaintiff is informed and believes that JH Distributors
3 | changed its name to Signator Investors, Inc. ("Signator") and/or Signator is its successor in
4 | interest and/or alter ego.

5 |      9.   Plaintiff is informed and believes that, at all times relevant herein,  Defendant
6 | John Hancock ("JH"), is and was a business of unknown type and jurisdiction which was doing
7 | business in San Diego County, California.

8 |      10.   Defendants JH Variable; JH Mutual; JH Life; JH Funds Inc.; JH Funds LLC;
9 | JHSS; JH Financial; JH Distributors; Signator; and JH shall be referred to collectively as the
10 | ("John Hancock Entities").

11 |      11.   The true names and capacities of those defendants sued herein as DOES 1 through
12 | 100, inclusive, whether individual, corporate, associate, representative or otherwise, are unknown
13 | to Plaintiff, who sues these defendants by their fictitious names.  When the DOE defendants' true
14 | names and capacities and their actual involvement in the matters alleged herein are fully
15 | ascertained, Plaintiff will amend this Complaint to accurately reflect the same.

16 |      12.   Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously
17 | named defendants designated hereunder as a DOE is responsible in some manner for the
18 | occurrences alleged herein, and that Plaintiff's damages as herein alleged were proximately
19 | caused or contributed to by their conduct.

20 |      13.   Plaintiff is informed and believes, and thereon alleges, that at all times relevant
21 | herein, each of the defendants mentioned was the agent, employee, partner, joint venturer, alter
22 | ego, and/or co-conspirator of one or more of the remaining defendants, and in doing the acts
23 | alleged herein, was acting within the purpose, course and scope of such agency, employment,
24 | partnership, joint venturer and/or conspiracy, and with the consent, permission and/or ratification
25 | of one or more of the remaining defendants.

26 | **Venue**

27 |      14.   Venue and jurisdiction are proper in this Court because the transactions at issue
28 | took place in San Diego County, California, and the negligent acts and damages resulting from

1    the negligent acts took place in San Diego County, California.

2    **Agency and Ostensible Agency**

3        15.    Plaintiff is informed and believes that at times relevant herein, each of the John

4    Hancock Entities, along with DOES 1-50 represented themselves as a unified entity to

5    consumers, and that the agents of one were the agents of all and/or the actions of the John

6    Hancock entities resulted in the agents of each of the defendants being the ostensible agent of the

7    other defendants.  This was done in a variety of ways including, but not limited to: (1) sending

8    out correspondence which referenced the various entities simultaneously; (2) combining the

9    functions of the various businesses into joint operations; (3) having sales and customer service

10   agents who represented the multiple entities simultaneously to customers; (4) having sales agents

11   licensed as both insurance sales persons and securities sales persons; (5) by advertising the John

12   Hancock logo as a single source for financial services including, but not limited to: insurance;

13   financial planning; investment advice; retirement planning; and brokerage services; and (6) by

14   requesting payments be made out to "John Hancock" without reference to the particular

15   subsidiary company involved.

16   **Alter Ego Allegations**

17       16.    The John Hancock Entities and DOES 1-50 hold themselves out to the public as a

18   set of unified and related companies.  There is such a unity of interest in ownership that the

19   separate personalities of the corporations no longer exist.  If the acts of any one of them are

20   treated as those of that corporation alone, an inequitable result will follow and therefore the

21   various entities are alter egos of each other.  For example, according to NASD disclosures by JH

22   Funds LLC and Signator, those two entities are under common control and are controlled by JH

23   Life.  JH Life is owned and controlled by JH Financial.

24   **General Allegations**

25       17.    Victoria Chavez (deceased) was Plaintiff's sister.  In 1974 Ms. Chavez married

26   Charles Mattarocchia.  On or about May 3, 1995, she was divorced from Mr. Mattarocchia and

27   her name was changed back to Victoria Chavez as of June 1, 1995.

28       18.    In the course of her marriage to Mr. Mattarocchia, Ms. Chavez purchased the

1    three financial products which are at issue in this litigation.

2         19.    The first financial product Ms. Chavez purchased from Defendants was a

3    Individual Life Insurance Policy No. 63 954 146 issued March 16, 1979 by JH Mutual.  That

4    Policy had a $20,000 "sum insured."  A true and correct copy of that Policy is attached hereto as

5    **Exhibit "A."**

6         20.    The second financial product Ms. Chavez purchased from Defendants was a

7    Annuity numbered SP5001772 issued on March 28, 1982 by JH Mutual.  A true and correct copy

8    of that Annuity contract is attached hereto as **Exhibit "B."**

9         21.    The third financial product Ms. Chavez purchased was a Individual Life Insurance

10   Policy No. UL 00 138 659 purchased from JH Variable and sold by JH Mutual with an "initial

11   face amount" of $100,000 issued on June 7, 1986.  A true and correct copy of that Insurance

12   contract is attached hereto as **Exhibit "C."**

13        22.    The forgoing three financial products will be referred to collectively as ("the

14   Three Financial Products").

15        23.    On or about March 25, 1996, Ms. Chavez sent a letter the John Hancock Entities

16   asking that they record a change in her name back to Chavez and that Mr. Mattarocchia's name

17   be taken off as beneficiary on all insurance and IRAs in her name (the "March 25[th] Letter").

18        24.    On or about April 10, 1996, in response to that letter, Colleen Larrea, a customer

19   service representative for the John Hancock Entities wrote to Ms. Chavez that the name would be

20   changed on her investment with John Hancock Sovereign Bond Fund Class A, but that to update

21   information on her life insurance policies she must contact John Hancock Mutual Life Insurance

22   Company directly. .(The letter shall be referred to as the "April 10[th] Letter.")  A copy of that

23   letter was sent to Glenn A. Morey who is identified as a registered representative.  Mr. Morey

24   was licensed both with the NASD as a registered representative for selling securities and with the

25   California Department of Insurance as a insurance sales person for selling insurance products.

26   Unfortunately, the John Hancock Entities sent this letter to Mr. Mattarocchia's address instead of

27   Ms. Chavez' address and so Ms. Chavez was not told that her request was not processed.

28        25.    As of March and April of 1996, The John Hancock Entities provided one-stop

1  financial services which included, among other things: investment advice; retirement advice;

2  stock brokerage services; insurance; annuities; mutual funds; and retirement plans. JH Mutual

3  was an insurance company and was also a licensed broker with the NASD.

4      26.    As of March and April of 1996, the John Hancock Entities presented themselves

5  in San Diego as a unified organization. The insurance sales people were licensed with the

6  California Department of Insurance and transacted business pursuant to licensure with that

7  Department. The same people also sold securities and were licensed as registered representatives

8  with the NASD and the business was conducted pursuant to that licensure. The people who were

9  the public face of the John Hancock Entities serviced multiple lines of business.

10      27.    As of March and April of 1996 the San Diego John Hancock Entities' office was

11  in a state of transition, disorganization and disarray. The Managing Agent and head of

12  operations, Raymond Lucia was focusing more and more on building his own business and

13  splitting off from the John Hancock Entities. And, the focus of the business was moving away

14  from selling lots of small life policies through company agents to providing a variety of financial

15  services. There were a lot of "orphan" clients, including Ms. Chavez, in the San Diego office

16  who had no one looking after their account on a regular basis.

17      28.    On or about May 10, 2001 Ms. Chavez died. Later that year, Plaintiff was

18  appointed Administrator of the Estate. Ms. Chavez had no trust, will, or spouse so she died

19  intestate. At the time of her death, the contracts for the Three Financial Products were at

20  Ms. Chavez' home.

21      29.    As the Administrator of Ms. Chavez' Estate, Plaintiff, with the assistance of her

22  husband, called the John Hancock Entities both in San Diego and at numbers believed to be a

23  corporate home office to find out if there had been any beneficiary changes on the Three

24  Financial Products. Plaintiff was told by the Corporate office that neither the Estate nor Plaintiff

25  was listed as a beneficiary. The John Hancock Entities would not reveal who was listed as

26  beneficiary or if any beneficiary changes from the original beneficiary had ever been made.

27      30.    Ms. Chavez' ex-husband eventually called Plaintiff wanting death certificates and

28  told Plaintiff that he was the beneficiary. Plaintiff, with the assistance of her husband, again

1  contacted the John Hancock Entities and explained that Ms. Chavez had been divorced for some

2  time and asked if there were any records of a beneficiary change. Plaintiff asked the John

3  Hancock Entities to look into that question before paying Ms. Chavez' ex-husband. The John

4  Hancock Entities told Plaintiff that their had not been any changes. Plaintiff inquired at the local

5  John Hancock Entities' office and was told that they had no record of any beneficiary changes on

6  any of Ms. Chavez' accounts.

7      31.    The John Hancock Entities paid Ms. Chavez' ex-husband the benefits from each

8  of the Three Financial Products (the "Death Benefits").

9      32.    At the time Plaintiff was administering the Estate, she did not have the

10  information concerning Ms. Chavez' March 25th Letter requesting the change in beneficiaries or

11  the April 10th Letter response which had been sent to the wrong address. Plaintiff took the

12  representations of the John Hancock Entities at face value. And Plaintiff, therefore, believed that

13  there was no documentation of any attempt or intent on the part of Ms. Chavez to change

14  beneficiaries.

15      33.    On or about October 31, 2002, the Estate of Ms. Chavez was closed and it was

16  ordered and adjudged that any and all other property of the Estate not known or discovered which

17  may belong to the Estate or which the decedent or Estate may have an interest is to be distributed

18  100% to Rebeca Palermino.

19      34.    In the spring of 2006, Plaintiff was in contact with the John Hancock Entities

20  concerning another account. This prompted Chris Hamilton of JHSS (believed to be John

21  Hancock Signature Services) to send a facsimile to Plaintiff's husband, Anthony Palermino, on

22  May 31, 2006 which included copies of the March 25th Letter and April 10th Letter ("the May

23  2006 Fax"). The May 2006 Fax header stated it was sent from "JH Control Funds." The May

24  2006 Fax cover sheet had the John Hancock signature logo and said "John Hancock Funds Fax

25  Cover Sheet." The "From:" line said it was from "Chris Hamilton JHSS." The March 25th Letter

26  showed a received stamp dated April 3, 1996.

27      35.    With the receipt of the May 2006 Fax Plaintiff saw the March 25th Letter and

28  April 10th Letter for the first time and first became aware that Ms. Chavez intended to and tried to

1 | change the beneficiary on the Three Financial Products and that The John Hancock Entities
2 | failed to complete the change request.

3 |     36.    On June 4, 2006, Plaintiff wrote to JHSS concerning this issue. LeeAnn Ignoto,
4 | ACS, Claim Consultant, responded stating that the Company never acknowledged the request for
5 | change in beneficiary and therefore they met their contractual obligations by making payments to
6 | Ms. Chavez' ex-husband. A series of letters back and forth followed and the John Hancock
7 | Entities refused to budge from that position.

8 |     37.    Plaintiff, therefore, files this lawsuit alleging the following causes of action:

9 | **FIRST CAUSE OF ACTION**

10 | **(Negligence)**

11 |     38.    Plaintiff realleges and incorporates herein by reference, all of the factual
12 | allegations contained in paragraphs 1-37, inclusive, of this Complaint.

13 |     39.    Defendants and each of them held themselves out as providing comprehensive
14 | financial services to meet Ms. Chavez' needs. They presented a untied front to customers as
15 | financial planners, investment advisors, stock brokers, mutual fund operators and insurance
16 | consultants. They interchangeably used several names and logos which created the impression of
17 | a single organization.

18 |     40.    Defendants had a duty to provide services in a competent, professional manner.

19 |     41.    Ms. Chavez requested that Defendants and each of them remove her ex-husband
20 | as beneficiary on all of her insurance products and IRA accounts, including the Three Financial
21 | Products. Defendants changed one account but not the Three Financial Products. Instead, they
22 | wrote to Ms. Chavez telling her to contact someone else within the organization. However,
23 | Defendants negligently and mistakenly sent that notice to Ms. Chavez' ex-husband's address
24 | (whom she was trying to remove as beneficiary) rather than to her address. As such, Ms. Chavez
25 | was never notified that the change of beneficiary did not take place and died without her
26 | requested change being made. Had this mistake not been made by Defendants, Ms. Chavez
27 | would have had the beneficiary designation changed as it was on her other accounts to showing
28 | no beneficiary. If the beneficiary had been changed, Ms. Chavez' Estate would have become the

**COMPLAINT**<br>8

*Palermino v. John Hancock, et al.*

1  beneficiary and Plaintiff would have been entitled to the funds that were paid instead to Ms.

2  Chavez' ex-husband.

3    42.    In doing the foregoing, Defendants and each of them fell below the standard of

4  care for persons and organizations performing those services and were therefore negligent.

5    43.    As a proximate result of Defendants and each of their negligence, Plaintiff was

6  injured in the amount of the death benefits owed on the Three Financial Products, plus interest

7  and/or loss of use from the date of payment.

8                    **SECOND CAUSE OF ACTION**

9                      **(Breach of Fiduciary Duty)**

10   44.    Plaintiff realleges and incorporates herein by reference, all of the factual

11  allegations contained in paragraphs 1-37, inclusive, of this Complaint.

12   45.    The relationship between a stock broker (and its registered representatives) and its

13  client is fiduciary in nature and imposes on the broker (and its registered representatives), the

14  duty of acting in the highest good faith towards the principal. One of the duties of the fiduciary

15  is to render a full and fair disclosure to his/her principal of all facts which materially affect the

16  principal's rights and interests. Where there is a duty to disclose by fiduciary the disclosure must

17  be full and complete and any material concealment or misrepresentation will amount to fraud.

18   46.    The relationship between a financial advisor and the person being advised is

19  fiduciary in nature and imposes on the advisor the duty of acting in the highest good faith

20  towards the principal. One of the duties of the fiduciary is to render a full and fair disclosure to

21  his/her principal of all facts which materially affect the principal's rights and interests. Where

22  there is a duty to disclose by fiduciary the disclosure must be full and complete and any material

23  concealment or misrepresentation will amount to fraud.

24   47.    Defendants and each of them owed a fiduciary duty to Ms. Chavez to fully inform

25  her of her rights and interests concerning her transactions–including but not limited to her change

26  in beneficiary request to remove her ex-husband as a beneficiary on the Three Financial

27  Products. Defendants and each of them failed to provide such information to Ms. Chavez.

28  Instead, they violated her trust by sending their response to her request to her ex-husband.

48.     As a proximate result of Defendants' breaches, the beneficiary was not changed and the Estate was deprived of the benefit of the insurance for which Ms. Chavez had paid.

49.     Furthermore, when the Estate was being probated, Defendants had a duty to provide full and complete disclosure to the personal representative of the Estate (Plaintiff) as to all facts affecting the payment of benefits under the Three Financial Products.

50.     Defendants and each of them, rather than providing full disclosure, stonewalled and hid information concerning Ms. Chavez' attempt to change her beneficiary and the Defendants' negligence in failing to undertake the changes requested and in failing to inform Ms. Chavez of Defendants' failure to make that change.

51.     As a proximate result, the Plaintiff was deprived of the benefits of the payments under the Three Financial Products, plus interest from the date of payment.

### THIRD CAUSE OF ACTION

#### (Fraud/Deceit/Concealment)

52.     Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-37, and 45-51, inclusive, of this Complaint.

53.     Defendants had a fiduciary duty to disclose all pertinent information to the representative of Ms. Chavez' Estate on inquiry into the status of the various accounts and policies held by Defendants for Ms. Chavez, including information about the Three Financial Products.

54.     Instead of disclosing the relevant information, Defendants concealed that information and hid it from Plaintiff. Defendants continued to do so until May 31, 2006, when Chris Hamilton sent the May 2006 Fax.

55.     Plaintiff is informed and believes that Defendants intentionally withheld the documents from the Estate at the time of probate and/or failed to disclose this information when they were under a fiduciary duty to disclose it. Plaintiff relied to her detriment on the representations of Defendants to the effect that there was no question as to the intended beneficiary on the Three Financial Products. That representation was not true, and Defendants had actual knowledge that the representation was not true.

56.     As a proximate result of the fraud and concealment of Defendants, Plaintiff did not have the information to challenge the payment of the benefits to Ms. Chavez' ex-husband and Defendants paid the death benefits to Ms. Chavez' ex-husband in error.  Plaintiff was deprived of the benefits of those payments and the use of those funds from the date of the payment to Ms. Chavez' ex-husband until the date the funds are properly paid to Plaintiff.

57.     As a further proximate result of the actions of Defendants, and each of them, Plaintiff suffered mental stress, anxiety and emotional distress.

58.     Plaintiff is informed and believes that Defendants' actions were motivated by malice, fraud and/or oppression and, accordingly, punitive damages should be assessed against Defendants according to law and in a manner which would punish and deter such conduct in the future, pursuant to Civil Code section 3294.

## FOURTH CAUSE OF ACTION

### (Negligent Misrepresentation)

59.     Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-37, inclusive, of this Complaint.

60.     In the process of handling the Ms. Chavez' Estate, Plaintiff contacted John Hancock to inquire about the beneficiary designations on the Three Financial Products and was told by John Hancock personnel that there was no record of any change or attempt to change the beneficiary and that the payment must go to Ms. Chavez' ex-husband.

61.     The representations by the Defendants were not true and the Defendants were negligent in failing to determine the truth of their statements.

62.     Plaintiff relied upon the representations by the Defendants and did not challenge the distribution of the proceeds of the Three Financial Products to Ms. Chavez' ex-husband.

63.     As a proximate result of the negligent misrepresentations of Defendants and each of them, Plaintiff was deprived of payment of the death benefit and the use of those funds from the date of payment to Ms. Chavez' ex-husband to the date the funds are finally properly paid to Plaintiff.

///

## FIFTH CAUSE OF ACTION

### (Breach of Contract)

64.    Plaintiff realleges and incorporates herein by reference, all of the factual allegations contained in paragraphs 1-37, inclusive, of this Complaint.

65.    Plaintiff entered into three written contracts with Defendants and each of them. Those contracts are attached hereto as **Exhibits "A," "B"** and **"C."** Ms. Chavez asked that the beneficiary be changed by submitting the request in writing. That writing was dated March 25, 1996 and was stamped as received by Defendants on April 3, 1996.

66.    Pursuant to the text of each contract the Insured (Ms. Chavez) could change the Beneficiary by written notice. And "[a] change will take effect when the notice is signed if we acknowledge receipt on the notice."

67.    Defendants acknowledged receipt of the notice. Defendants acknowledge receipt by: (1) writing to Ms. Chavez on April 10, 1996; (2) by making the other requested change(s); and (3) sending the May 2006 Fax. Therefore, pursuant to the terms of the policy, the change took effect as of March 25, 1996 (the date the notice was signed) because Defendants acknowledged the notice.

68.    Defendants breached the contract by failing to make note of the change in beneficiary and paying the benefits to the wrong person. Defendants further breached the implied covenant of good faith and fair dealing by mailing the April 10th Letter to Ms. Chavez' ex-husband's address instead of to her and by insisting on an unnecessary second notice (after having acknowledged the first) when none is required by the policy.

69.    As a proximate result of the breach of contract by Defendants and each of them, Plaintiff was deprived of the benefits payable on the Three Financial Products plus loss of use of those proceeds and/or interest on the proceeds from the date of Ms. Chavez' death until the time of payment to Plaintiff by Defendants.

## SIXTH CAUSE OF ACTION

### (Violation of the Covenant of Good Faith and Fair Dealing)

70.    Plaintiff realleges and incorporates herein by reference, all of the factual

1 | allegations contained in paragraphs 1-37 and 65-69, inclusive, of this Complaint.

2 |     71.    There is implied in every contract, a covenant of good faith and fair dealing that

3 | each party will not do anything that will deprive the other party of their benefits of the contract.

4 | In the insurance context, when this covenant is breached by the insurance company in the course

5 | of providing (or failing to provide) policy benefits, the breach gives rise to the tort of "bad faith."

6 |     72.    Defendants breached the covenant of good faith and fair dealing by, among other

7 | things: (1) failing to investigate all of the facts concerning the proper payment upon the death of

8 | Ms. Chavez; (2) paying the death benefits to the wrong person; (3) hiding documents from the

9 | Estate concerning the change in beneficiary which was mishandled by Defendants; (4) hiding and

10 | burying the negligence of the Defendants in failing to process the request in change of

11 | beneficiary; and (5) stonewalling Plaintiff after she discovered the company's concealment of

12 | facts.

13 |     73.    As a proximate result of these violations of the covenant of good faith and fair

14 | dealing, Plaintiff has suffered damages including but not limited to:  policy benefits which

15 | should have been paid to the Estate; attorney's fees and expenses in pursing those policy

16 | benefits; loss of use of the policy benefits; emotional distress, anxiety, and mental suffering.

17 |     74.    Plaintiff is informed and believes that Defendants' actions were motivated by

18 | malice, fraud and/or oppression and, accordingly, punitive damages should be assessed against

19 | Defendants according to law and in a manner which would punish and deter such conduct in the

20 | future, pursuant to Civil Code section 3294.

21 |     WHEREFORE, Plaintiff prays for judgment herein against Defendants and each of them

22 | as follows:

23 | For the First Cause of Action

24 |     1.    For compensatory damages in an amount according to proof and more than the

25 | minimum jurisdiction of this Court in an amount estimated to be in excess of $175,000.

26 | For the Second Cause of Action

27 |     1.    For compensatory damages in an amount according to proof and more than the

28 | minimum jurisdiction of this Court in an amount estimated to be in excess of $175,000; and

2.     For punitive damages according to law in an amount that would punish and deter such conduct in the future pursuant to Civil Code section 3294, according to proof.

For the Third Cause of Action

1.     For compensatory damages in an amount according to proof and more than the minimum jurisdiction of this Court in an amount estimated to be in excess of $175,000;

2.     The extent that Defendants actions were intentional, for consequential damages and emotional distress according to proof pursuant to Civil Code §§ 1709 and 3333; and

3.     For punitive damages according to law in an amount that would punish and deter such conduct in the future pursuant to Civil Code section 3294, according to proof.

For the Fourth Cause of Action

1.     For compensatory damages in an amount according to proof and more than the minimum jurisdiction of this Court in an amount estimated to be in excess of $175,000.

For the Fifth Cause of Action

1.     For compensatory damages in an amount according to proof and more than the minimum jurisdiction of this Court in an amount estimated to be in excess of $126,000; and

2.     Pre-judgment interest at the legal rate currently estimated to be over $75,000.

For the Sixth Cause of Action

1.     Economic damages in an amount in excess of the minimum jurisdiction for this Court and to be determined according to proof;

2.     Non-Economic damages, including but not limited to, emotional distress damages in an amount in excess of the minimum jurisdiction for this Court and to be determined according to proof;

3.     Attorney's fees pursuant to *Brant v. Superior Court* (1985) 37 Cal.3d 813, in an amount in excess of the minimum jurisdiction for this Court and to be determined according to proof; and

4.     For punitive damages according to law in an amount which would punish and deter such conduct in the future pursuant to Civil Code section 3294, according to proof.

/ / /

1   For All Causes of Actions

2       1.      For costs of suit incurred herein (including attorney's fees pursuant to *Brant v.*

3   *Superior Court* (1985) 37 Cal.3d 813); and

4       2.      For such other and further relief as the Court may deem proper.

5   DATED:   5- 30-07                          LAW OFFICE OF WILLIAM E. O'NELL

6

7                                             By: _____

8                                                 William E. O'Nell, Esq.
                                                  Attorney for Plaintiff, Rebeca Palermino

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



*John Hancock* Mutual Life In

John Hancock Place
Boston, Massachusetts 02117

**INSURED**   VICTORIA MATTAROCCHIA          $20,000   **SUM INSURED**

**POLICY NUMBER**   63 954 146          MARCH 16, 1979   **DATE OF ISSUE**

# Individual Life Insurance

The John Hancock Mutual Life Insurance Company agrees, subject to the conditions and provisions of this policy, to pay the Sum Insured to the Beneficiary if the Insured's death occurs while the policy is in full force, and to provide the other Benefits, Rights and Privileges of the policy.

Payment will be made on receipt at the Home Office of the Company in Boston, Massachusetts, of due proof of the Insured's death.

The policy is issued in consideration of the application and the payment of the premiums.

The Policy Specifications on page 3 and the conditions and provisions on this and the following pages are part of the policy.

**10 Day Right of Examination — This policy may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium paid on it will then be refunded.**

Signed for the Company at Boston, Massachusetts.

*John G. McElwee*
President

*Horace R Baker Jr*
Secretary

Life policy with premiums payable to end of stated period or to Insured's death, if earlier

Sum Insured payable at death

Annual dividends

Schedules of benefits and premiums, and the premium class, are shown on page 3

Form 78-1

**Policy Provisions**

Section

| | |
|---|---|
| 1 | Definitions |
| 2 | Policy Specifications |
| 3 | Table of Values |
| 4 | Owner, Contingent Owner, Beneficiary |
| 5 | Payment of Premiums, Grace Period |
| 6 | Dividends |
| 7 | Loans |
| 8 | Automatic Payment of Premiums |
| 9 | Reinstatement |
| 10 | Surrender Value and Nonforfeiture Provisions |
| 11 | Interest on Proceeds |
| 12 | Claims of Creditors |
| 13 | Assignment |
| 14 | Incontestability |
| 15 | Misstatement of Age or Sex |
| 16 | Suicide |
| 17 | The Contract |
| 18 | Settlement Provisions |

**Alphabetical Guide**

Section

| | |
|---|---|
| 13 | Assignment |
| 8 | Automatic Payment of Premiums |
| 10 | Basis of Computations |
| 4 | Beneficiary |
| 12 | Claims of Creditors |
| 17 | Contract |
| 1 | Definitions |
| 6 | Dividends |
| 10 | Extended Term Insurance |
| 5 | Grace Period |
| 14 | Incontestability |
| 7 | Interest on Loans |
| 11 | Interest on Proceeds |
| 7 | Loans |
| 15 | Misstatement of Age or Sex |
| 10 | Nonforfeiture Provisions |
| 4 | Owner |
| 10 | Paid-Up Insurance |
| 5 | Payment of Premiums |
| 2 | Policy Specifications |
| 2.5 | Premiums |
| 9 | Reinstatement |
| 18 | Settlement Provisions |
| 16 | Suicide |
| 10 | Surrender Value |
| 3,10 | Table of Values |

## 1. DEFINITIONS

"We", "us" and "our" refer only to the John Hancock Mutual Life Insurance Company.

"You" and "your" refer only to the Owner of this policy.

"Payment" means, unless otherwise stated, payment at our Home Office in Boston, Massachusetts.

"Indebtedness" means loan indebtedness on the policy.

"Written notice" means, unless otherwise stated, a written notice filed at our Home Office in Boston, Massachusetts, or at one of our authorized offices.

"In full force" means that the insurance under the policy is being continued for the Sum Insured or the Policy Cash Value if larger and that no unpaid premium is more than 31 days overdue.

2

OWNER, BENEFICIARY — AS DESIGNATED IN THE APPLICATION SUBJECT TO SECTION 4 OF THE POLICY

ISSUE AGE · 24 INSURED   VICTORIA MATTAROCCHIA          $20,000      SUM INSURED

POLICY NUMBER        63 954 146          MARCH 16, 1979      DATE OF ISSUE·

THIS POLICY IS IN A   STANDARD   PREMIUM CLASS.   8% OR LESS LOAN INTEREST RATE

| SCHEDULE OF BENEFITS | POLICY PLAN | SCHEDULE OF PAYABLE† | ANNUAL PREMIUMS AMOUNT |
|---|---|---|---|
| | LIFE PAID UP AT AGE 65 | | |
| LIFE INSURANCE | | TO AGE 65 | $316.60 |
| DISABILITY--WAIVER OF PREMIUMS ONLY. | | TO AGE 65 | $7.80 |
| ACCIDENTAL DEATH BENEFIT, $40,000. THIS BENEFIT IS IN A SPECIAL PREMIUM CLASS. | | 41 YEARS | $48.00 |
| INSURANCE OF INSURABILITY BENEFIT PURCHASE LIMIT FOR EACH ADDITIONAL POLICY OF INSURANCE IS $10,000 | | 16 YEARS | $17.00 |

·The date of issue and the issue age of each Provision for an additional benefit is the Date of Issue and the Issue Age of the policy unless otherwise specified.
†Premiums are payable from the date of issue to the policy anniversary nearest the Insured's birthday at the age stated, or as otherwise provided, but not beyond the end of the policy month in which the Insured's death occurs.

*John Hancock*

300-400

3. TABLE OF VALUES
   (SEE SECTION 10)

PLAN      LIFE PAID UP AT AGE 65

SUM INSURED      $20,000

POLICY NUMBER    63954146      ISSUE AGE    24

BASED ON 3.50% INTEREST FOR THE FIRST 20 YEARS AND 3.00% THEREAFTER.
VALUES FOR YEARS NOT SHOWN WILL BE FURNISHED ON REQUEST.

| END OF POLICY YEAR | POLICY CASH VALUE OR LOAN VALUE | PAID-UP INSURANCE | EXTENDED TERM INSURANCE | |
|---|---|---|---|---|
| | | | YEARS | DAYS |
| 1 | $     0.00 | $     0 | 0 | 0 |
| 2 | 0.00 | 0 | 0 | 0 |
| 3 | 140.00 | 500 | 2 | 239 |
| 4 | 420.00 | 1,480 | 8 | 57 |
| 5 | 700.00 | 2,400 | 12 | 308 |
| 6 | 1,000.00 | 3,320 | 16 | 143 |
| 7 | 1,300.00 | 4,200 | 18 | 327 |
| 8 | 1,620.00 | 5,080 | 20 | 308 |
| 9 | 1,940.00 | 5,900 | 22 | 95 |
| 10 | 2,280.00 | 6,740 | 23 | 160 |
| 11 | 2,580.00 | 7,400 | 24 | 26 |
| 12 | 2,880.00 | 8,020 | 24 | 183 |
| 13 | 3,200.00 | 8,640 | 24 | 320 |
| 14 | 3,520.00 | 9,220 | 25 | 38 |
| 15 | 3,860.00 | 9,820 | 25 | 109 |
| 16 | 4,200.00 | 10,380 | 25 | 143 |
| 17 | 4,560.00 | 10,940 | 25 | 167 |
| 18 | 4,900.00 | 11,420 | 25 | 136 |
| 19 | 5,280.00 | 11,960 | 25 | 128 |
| 20 | 5,660.00 | 12,440 | 25 | 94 |
| 36 AGE 60 | 11,780.00 | 18,360 | 21 | 206 |
| 38 AGE 62 | 12,640.00 | 19,000 | 21 | 121 |
| 41 AGE 65 | 14,020.00 | | | |

CALCULATION FACTORS —        65.43400 YEARS   1 THROUGH 10
                             15.03400 YEARS   11 THROUGH 20

## 4. OWNER, CONTINGENT OWNER, BENEFICIARY

The Owner, the Contingent Owner (if any) and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice; but if a person other than the Insured applied for this policy, only your appointed guardian may exercise your rights if you have not reached full age.

(Applicable only if the Issue Age shown on page 3 is under 15) — If you die or become legally disabled, the Contingent Owner will become the Owner. If there is no surviving Contingent Owner, the Insured will become the Owner.

If the Insured dies and there is no surviving Beneficiary, you will be the Beneficiary; but if you were the Insured, your estate will be the Beneficiary.

While the Insured is alive, you may change the Owner, Contingent Owner and Beneficiary by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not you or the Insured is then alive. A change shall be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we acknowledged receipt.

## 5. PAYMENT OF PREMIUMS, GRACE PERIOD

Premiums are payable as shown on page 3. They may be paid at more frequent intervals in accordance with our published rates and requirements in effect at the Date of Issue. Each premium is due and payable in advance on the first day of its interval of premium payment. For the first premium, this day is the Date of Issue.

Payment of premiums shall be made either to us at our Home Office or to an agent authorized to receive the payment. Receipts will be delivered on request in exchange for premium payments. They will be valid only if signed by the President or the Secretary and countersigned by the agent shown on the receipt.

Any premium, other than the first, not paid when due may be paid within a grace period of 31 days after its due date if premiums have been paid to that date. The policy will continue in full force during that period.

If the Insured dies while the policy is in full force, we will refund or charge premiums to effect payment to the end of the policy month in which the Insured dies. We will pay any refund to you if you are not the Insured; otherwise we will pay it to the Beneficiary. We will deduct any charge from any proceeds.

## 6. DIVIDENDS

This policy, except while in force as Extended Term Insurance, will be entitled to the share, if any, of the divisible surplus which we shall annually determine and apportion to it. We shall distribute any share as a dividend payable annually beginning not later than the end of the second policy year.

You may elect to have any dividend paid or applied under one of the following options:

a. Paid in cash;

b. Applied to premium payments;

c. Left with us to earn interest at the rate that we declare. This rate will not be less than 3% a year on amounts on deposit for full policy years. You may make withdrawals on request;

d. Used to purchase an amount of paid-up insurance, in addition to the Sum Insured. The amount will be determined on the same basis as the Paid-Up nonforfeiture benefit. This insurance will always have a cash value of at least the amount of the dividend used to purchase it.

Unless you have elected a different option, each dividend will be left under option c. You may elect to change the option. The election may be effective as to any dividend payable within 31 days before the election.

We will apply dividend and interest credit under option c to make the policy, including only the Life Insurance and any Disability and Accidental Death Benefits, fully paid-up on your written request if we determine that credit is sufficient.

We will pay as part of the proceeds payable at the Insured's death, or at the Date of Maturity, if any, shown on page 3, any unpaid or unapplied dividends and interest and any paid-up insurance under option d outstanding when the proceeds become payable.

5

500-600

## 7. LOANS

You may borrow money from us on completion of a form satisfactory to us assigning the policy as the only security for the loan.

. Loans may be made at any time a Loan Value is available after the first policy year if the policy is not in force on the Extended Term Insurance basis. We may defer loans as provided by law. We will not defer loans for more than 6 months. We will not defer loans to pay premiums on our policies.

The Loan Value while the policy is in full force will be the amount of the Policy Cash Value as provided in the Table of Values plus the cash value of any insurance under dividend option d. Values will be determined as of the next (i) policy anniversary date or (ii) premium due date, whichever is the earlier date. The Loan Value while the policy is in force as Paid-Up Insurance will be the value determined according to the ·'Basis of Computations'' provision plus the cash value of any insurance under dividend option d. Values will be determined as of the next policy anniversary. The amount of loan available will be the Loan Value less any existing indebtedness, loan interest and unpaid premiums to the date values are determined.

Loan interest on the rate basis shown on page 3 will be payable on each policy anniversary date and on the date the loan is settled. If interest is not paid when due, it shall be added to the loan to bear interest from its due date at the same rate.

A loan may be repaid in full or in part at any time before the Insured's death, and while the policy is in full force.

We will deduct any indebtedness from the amount otherwise payable when the policy proceeds become payable.

Failure to repay the loan or to pay interest will terminate the policy when the indebtedness equals or exceeds the Loan Value and 31 days after notice has been mailed to you and any assignee of record with us at the address last known to us. This provision will apply whether or not premiums are paid to a date beyond the date of termination.

## 8. AUTOMATIC PAYMENT OF PREMIUMS

An election may be made for Automatic Payment of Premiums either in the application or by written notice acknowledged by us while the policy is in full force. You may revoke the election at any time by written notice.

**(1) Dividend Credit** (Applicable only if elected.) While this election is in effect, we will pay any premium which is unpaid at the end of its grace period from any amount on deposit under dividend option c; if sufficient.

**(2) Automatic Loan** (Applicable only if elected and only if annual premiums are shown in the Schedule of Premiums shown on page 3.) While this election is in effect, we will pay any premium which is unpaid at the end of its grace period, and which is not paid by Dividend Credit, by a loan which we will automatically advance, if sufficient. The loan will be subject to the provisions of Section 7. Loans.

While both elections are in effect, and if sufficient value exists, we will first apply amounts by Dividend Credit and then, if necessary, by Automatic Loan.

While either election is in effect, if the amount available is less than the premium due, the interval of premium payment will be changed to the next shorter interval, if any, for which premiums may be paid and which the amount available is sufficient to pay in full. If the amount available is not sufficient to pay a premium for a shorter interval, this provision will not be effective. The Nonforfeiture Provisions shall then apply.

## 9. REINSTATEMENT

The policy may be reinstated within 5 years after the due date of the first unpaid premium unless the surrender value has been paid or otherwise exhausted, or the period of any extended term insurance has expired.

The Reinstatement requirements are:

(1) A written application for reinstatement, and

(2) Production of evidence of insurability satisfactory to us, and

(3) Payment of overdue premiums with interest, and

(4) Payment or reinstatement of any indebtedness outstanding when the policy lapsed, with payment of interest.

Interest at the rate of 6% on premiums and indebtedness compounded annually will be payable to the date of reinstatement.

6                                                                                                    500-600

## 10. SURRENDER VALUE AND NONFORFEITURE PROVISIONS

### SURRENDER VALUE

We will pay the surrender value of the policy on receipt of written notice before the Insured's death and on surrender of the policy.

While the policy is in full force the surrender value will be equal to the Policy Cash Value in accordance with the "Basis of Computations" and the "Table of Values" provisions, plus any dividends and interest unpaid or unapplied and the cash value of any insurance under dividend option d. less any indebtedness.

While the policy is in force as Extended Term Insurance or Paid-Up Insurance, the surrender value will be the value determined according to the "Basis of Computations" provision plus any dividends and interest unpaid or unapplied and the cash value of any insurance under dividend option d. less any indebtedness. On surrender within 30 days after a policy anniversary, the value of the Extended Term Insurance or Paid-Up Insurance will not be less than the value on that anniversary.

Within 60 days after the date to which premiums are paid the surrender value will not be less than the surrender value on that date adjusted by any changes since that date in amounts of dividends and interest, paid-up insurance under dividend option d and indebtedness under the policy.

We may defer the payment of any surrender value as provided by law. We will not defer payment for more than 6 months from the date we receive written notice and the policy. If we defer payment for more than 29 days, we will pay interest on the surrender value at the rate of 3% a year for the period the payment is deferred.

### EXTENDED TERM INSURANCE OR PAID-UP INSURANCE

(Extended Term Insurance is not available if the policy is in a Special Premium Class as shown on page 3.)

If a premium has not been paid when its grace period ends, the policy will lapse. If the policy has no surrender value the insurance will cease to be in force at the end of 31 days after the due date of the unpaid premium. If the policy has a surrender value we will apply it as a net single premium to provide insurance on an adjusted basis commencing on the due date of the unpaid premium. This insurance will be

(1) Extended Term Insurance for the period as provided in the "Basis of Computations" and the "Table of Values" provisions if the policy is in a Standard Premium Class as shown on page 3, or

(2) Paid-Up Insurance for the amount as provided in the "Basis of Computations" and the "Table of Values" provisions if the policy is in a Special Premium Class as shown on page 3, or if the amount of Paid-Up Insurance equals or exceeds the amount of Extended Term Insurance.

You may elect Paid-Up Insurance in place of Extended Term Insurance by written notice no later than 60 days after the due date of the unpaid premium and before the Insured's death.

The amount of Extended Term Insurance will be equal to the Sum Insured, plus any dividends and interest unpaid or unapplied and the amount of any insurance under dividend option d. less any indebtedness. We shall apportion no dividend to the policy while it is in force as Extended Term Insurance.

On the Insured's death we will pay to the Beneficiary in place of all other benefits any amount of Extended Term Insurance or Paid-Up Insurance then in force.

### BASIS OF COMPUTATIONS

Values, reserves and net premiums referred to in this policy are computed on the basis of the Commissioners 1958 Standard Ordinary Mortality Table, except those for Extended Term Insurance which are computed on the basis of the Commissioners 1958 Extended Term Insurance Table. The computations are made using the interest basis shown on page 4 with continuous functions.

The Policy Cash Value during the premium payment period is equal to the reserve less the present value of any applicable calculation factors as shown on page 4. Any Policy Cash Value after the end of the premium payment period and any value while the policy is in force as Extended Term Insurance or Paid-Up Insurance will be equal to the applicable net single premium.

A detailed statement of the method of computation of the nonforfeiture values has been filed with the insurance supervisory officials of the jurisdiction in which this policy has been delivered or issued for delivery. The values are not less than minimum values under the law of that jurisdiction. Reserves referred to in this policy are computed by the net level premium method.

7

**TABLE OF VALUES (See page 4)**

The Table of Values on page 4 is a part of this provision. The values shown apply at the end of the policy year only if premiums are paid to that date and only if there is no indebtedness, no dividend and interest unpaid or unapplied and no insurance under dividend option d. The values at a date other than the end of a policy year will be determined as of the end of a policy month in a manner consistent with that used to determine the values at the end of the year.

Any values, reserves and net premiums applicable to any provision for an additional benefit shall be as specified in the provision. They have no effect in determining the values available under the provisions of this Section 10.

## 11. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment. The rate will be the same as declared for Option 1, Settlement Provisions.

## 12. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## 13. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Insured and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 14. INCONTESTABILITY

This policy, except any provision for a disability benefit, shall be incontestable after it has been in force during the lifetime of the Insured for 2 years from its Date of Issue, except for nonpayment of premium.

## 15. MISSTATEMENT OF AGE OR SEX

If the age or the sex of the Insured has been misstated, we will adjust the Sum Insured and every other benefit to that which the premium paid would have purchased at the correct age and sex.

## 16. SUICIDE

If the Insured commits suicide, while sane or insane, within 2 years from the Date of Issue, we will pay in place of all other benefits an amount equal to the premiums paid less the amount of any loan advanced and not repaid to us in cash.

## 17. THE CONTRACT

The entire contract between the applicant and us consists of the policy and the written application. A copy of the application is attached at issue. All statements made in the application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of the Insured to defend a claim under the policy unless it is in the written application.

Policy years, policy months and policy anniversaries are measured from the Date of Issue.

Changes in this policy may be made by agreement between you and us.

An exchange of this policy for a new policy on a different plan may be made by agreement between you and us in accordance with our published rules in effect at the Date of Issue.

Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

8

700-800

## 18. SETTLEMENT PROVISIONS

### OPTIONAL METHODS OF SETTLEMENT

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit or as the surrender value, if any, may be left with us. under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the election of any one of the options below. We shall annually declare the rate of interest or amount of payment applicable to each option.

**Option 1** — Interest Income at the declared rate but not less than 3% a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A** — Income of a Specified Amount, with payments each year totaling at least 1/12th of the proceeds, until the proceeds, with interest credited at the declared rate but not less than 3¼% a year on unpaid balances, are fully paid.

**Option 2B** — Income for a Fixed Period. with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3** — Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the Payee dies within the guaranteed period, we will pay the discounted value of the remaining guaranteed payments. We will use interest at the rate assumed in determining the payments to calculate this value.

**Option 4** — Life Income without Refund at the death of the Payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5** — Life Income with Cash Refund at the death of the Payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may elect an option by written notice during the lifetime of the Insured. The election must be made before the proceeds become payable. If you have made no effective election, the Payee may make an election by written notice within 6 months after the Insured's death or 2 months after the date on which the proceeds, if any, are payable in any case except death.

No election of an option may provide for income payments of less than $25.00. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The Payee under an option shall be either the Insured or the Beneficiary.

These options are not available without our consent if the proceeds are payable (1) in any case, except death, before the policy has been in force on the same plan for at least 5 years, or (2) in any case to an executor, administrator, trustee, corporation, partnership, association or assignee.

The Payee may, by written notice, designate and change the designation of a Contingent Payee to receive any final amount that would otherwise be payable to the Payee's estate.

900-100



**Table for Options 2B, 3, 4 and 5**
(Monthly payments for each $1000 of proceeds applied)

| OPTION 2B Income for a Fixed Period | | Age of Payee on Birthday Nearest Date of First Payment | | OPTION 3 Life Income with Guaranteed Period | | OPTION 4 Life Income without Refund | OPTION 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|---|
| Period of Years | Payment | Male | Female | 10 Years | 20 Years | | |
| 1 | 84.56 | 35 | 40 | 3.82 | 3.79 | 3.83 | 3.76 |
| 2 | 42.96 | 36 | 41 | 3.86 | 3.82 | 3.87 | 3.80 |
| 3 | 29.09 | 37 | 42 | 3.91 | 3.86 | 3.92 | 3.84 |
| 4 | 22.16 | 38 | 43 | 3.95 | 3.90 | 3.96 | 3.87 |
| 5 | 18.01 | 39 | 44 | 4.00 | 3.94 | 4.01 | 3.91 |
| 6 | 15.24 | 40 | 45 | 4.05 | 3.98 | 4.06 | 3.95 |
| 7 | 13.27 | 41 | 46 | 4.10 | 4.02 | 4.12 | 4.00 |
| 8 | 11.79 | 42 | 47 | 4.15 | 4.07 | 4.18 | 4.04 |
| 9 | 10.64 | 43 | 48 | 4.21 | 4.11 | 4.24 | 4.08 |
| 10 | 9.72 | 44 | 49 | 4.27 | 4.16 | 4.30 | 4.13 |
| 11 | 8.97 | 45 | 50 | 4.33 | 4.21 | 4.36 | 4.18 |
| 12 | 8.35 | 46 | 51 | 4.39 | 4.26 | 4.43 | 4.23 |
| 13 | 7.82 | 47 | 52 | 4.46 | 4.31 | 4.51 | 4.29 |
| 14 | 7.37 | 48 | 53 | 4.53 | 4.36 | 4.58 | 4.34 |
| 15 | 6.98 | 49 | 54 | 4.60 | 4.42 | 4.66 | 4.40 |
| 16 | 6.65 | 50 | 55 | 4.68 | 4.47 | 4.74 | 4.46 |
| 17 | 6.35 | 51 | 56 | 4.75 | 4.53 | 4.83 | 4.52 |
| 18 | 6.08 | 52 | 57 | 4.83 | 4.58 | 4.92 | 4.59 |
| 19 | 5.84 | 53 | 58 | 4.92 | 4.64 | 5.02 | 4.66 |
| 20 | 5.63 | 54 | 59 | 5.01 | 4.70 | 5.12 | 4.73 |
| 21 | 5.44 | 55 | 60 | 5.10 | 4.76 | 5.22 | 4.81 |
| 22 | 5.27 | 56 | 61 | 5.19 | 4.82 | 5.33 | 4.89 |
| 23 | 5.11 | 57 | 62 | 5.29 | 4.88 | 5.45 | 4.97 |
| 24 | 4.97 | 58 | 63 | 5.40 | 4.94 | 5.57 | 5.06 |
| 25 | 4.84 | 59 | 64 | 5.51 | 5.00 | 5.70 | 5.15 |
| 26 | 4.71 | 60 | 65 | 5.62 | 5.07 | 5.84 | 5.25 |
| 27 | 4.60 | 61 | 66 | 5.74 | 5.13 | 5.98 | 5.35 |
| 28 | 4.50 | 62 | 67 | 5.87 | 5.19 | 6.14 | 5.46 |
| 29 | 4.40 | 63 | 68 | 6.00 | 5.24 | 6.31 | 5.58 |
| 30 | 4.31 | 64 | 69 | 6.14 | 5.30 | 6.49 | 5.69 |
| Annual, semi-annual or quarterly payments under Option 2B are 11.826, 5.961 and 2.992 respectively times the monthly payments. | | 65 | 70 | 6.28 | 5.35 | 6.68 | 5.82 |
| | | 66 | 71 | 6.43 | 5.41 | 6.88 | 5.96 |
| | | 67 | 72 | 6.59 | 5.46 | 7.10 | 6.09 |
| | | 68 | 73 | 6.75 | 5.50 | 7.34 | 6.24 |
| | | 69 | 74 | 6.91 | 5.54 | 7.59 | 6.41 |
| | | 70 | 75 | 7.08 | 5.58 | 7.86 | 6.57 |
| | | 71 | 76 | 7.26 | 5.62 | 8.16 | 6.74 |
| | | 72 | 77 | 7.44 | 5.65 | 8.47 | 6.94 |
| | | 73 | 78 | 7.62 | 5.67 | 8.81 | 7.13 |
| | | 74 | 79 | 7.80 | 5.69 | 9.18 | 7.34 |
| | | 75 | 80 | 7.98 | 5.71 | 9.58 | 7.58 |
| | | 76 | 81 | 8.17 | 5.72 | 10.01 | 7.81 |
| | | 77 | 82 | 8.35 | 5.73 | 10.48 | 8.06 |
| | | 78 | 83 | 8.52 | 5.74 | 10.98 | 8.36 |
| | | 79 | 84 | 8.69 | 5.75 | 11.53 | 8.64 |
| | | 80 | 85 & over | 8.85 | 5.75 | 12.13 | 8.94 |
| | | 81 | | 9.01 | 5.75 | 12.77 | 9.32 |
| | | 82 | | 9.15 | 5.75 | 13.48 | 9.66 |
| | | 83 | | 9.28 | 5.75 | 14.25 | 10.04 |
| | | 84 | | 9.39 | 5.75 | 15.09 | 10.53 |
| | | 85 & over | | 9.49 | 5.75 | 16.03 | 10.96 |

Options 3, 4 and 5 are available only at the ages as shown.

900-100

 Mutual Life Insurance Company

## RIDER

## ACCIDENTAL DEATH BENEFIT PROVISION

**ADDITIONAL BENEFIT IN EVENT OF INSURED'S ACCIDENTAL DEATH AS DEFINED AND LIMITED**
(Applicable On And After Policy Anniversary Nearest Insured's 5th Birthday
And Before Policy Anniversary Nearest Insured's 70th Birthday)

We agree, subject to the terms and conditions of this Provision and the policy, to pay an Accidental Death Benefit to the Beneficiary on receipt at our Home Office of due proof of the accidental death of the Insured which directly shows that

(1) Death resulted directly and independently of all other causes from an accidental bodily injury, and

(2) Both the injury and death occurred (i) on or after the policy anniversary nearest the Insured's 5th birthday, and (ii) before the policy anniversary nearest the Insured's 70th birthday, and (iii) while the policy and this Provision were in full force.

We will pay the Accidental Death Benefit in addition to the Sum Insured which is applicable to the Insured's life at the date of death. The amount we will pay will be

a. The applicable amount of the Accidental Death Benefit shown for this Provision on page 3 of the policy or

b. Twice the applicable amount of the Accidental Death Benefit shown for this Provision on page 3 of the policy if the required due proof also shows that the accidental injury was sustained while the Insured was a passenger in or upon a public conveyance operated by a common carrier for passenger service.

We will pay the Accidental Death Benefit in one sum unless otherwise provided by written notice in accordance with the Settlement Provisions of the policy.

This Provision is made a part of the policy to which it is attached, in consideration of the application, a copy of which is attached to and made a part of the policy, and payment of the premiums specified on page 3 of the policy applicable to this Benefit and the Life Insurance Benefit. The date of issue of this Provision is shown on page 3 of the policy.

Whenever premiums are waived under the policy in accordance with a disability benefit provision, we will waive premiums under this Provision.

### ACCIDENTAL DEATH DEFINED

The phrase "accidental death" means death resulting directly from

a. An accidental injury, or

b. A disease or infection resulting directly from an accidental injury as described and beginning within 30 days after the date of the injury, or

c. An accidental drowning.

### EXCEPTIONS AND EXCLUSIONS

We will pay no benefit under this Provision if the Insured's death results, directly or indirectly from

(1) Any infection or bodily or mental infirmity or disease existing before or commencing after the accidental injury, except a disease or infection as provided in the definition of "accidental death";

(2) Intentionally self-inflicted injury while sane, or self-inflicted injury while insane;

(3) Commission by the Insured of an assault or a felony;

(4) Travel, flight or descent in or from any kind of aircraft which is being operated for any training purpose, or which the Insured is aboard to perform specific duties whether applicable to the operation of the aircraft or not;

(5) War, whether declared or undeclared;

(6) Service in an armed force of any international organization, or any country or combination of countries at war whether declared or undeclared;

(7) The entry into the body, in any manner or nature whatever, and whether due to a voluntary, involuntary or other act of the Insured, of any intoxicant, excitant, or hallucinogen, or of any narcotic or other drug, unless the use is as prescribed for the Insured by a legally qualified physician, or, except involuntarily in the course of employment, of any gas, poison or poisonous substance, except for food poisoning.

9300D

**INCONTESTABILITY**

In applying the Incontestability provision of the policy to this Accidental Death Benefit Provision, we will measure the period stated from the date of issue of this Provision.

**TERMINATION**

This Provision will terminate upon the earliest of

a. The lapse, exchange or termination of the policy, or

b. The expiry or maturity of the policy, or payment or application of the surrender value, or

c. The due date of the premium next following receipt at our Home Office of a request for discontinuance by written notice and presentation of the policy for adjustment, or

d. The policy anniversary nearest the Insured's 70th birthday.

**Signed for the Company at Boston, Massachusetts.**

*John G. McElwee*
President

*Horace R Baker Jr*
Secretary

9300D-2 Accidental Death

 Mutual Life Insurance Company

## RIDER

**INSURANCE OF INSURABILITY BENEFIT PROVISION**
**RIGHT TO PURCHASE ADDITIONAL INSURANCE OF CERTAIN AMOUNTS ON APPLICABLE PURCHASE**
**DATES WITHOUT EVIDENCE OF INSURABILITY**
**INTERIM TERM INSURANCE ON THE LIFE OF THE INSURED BEGINNING ON THE DATE OF INSURED'S**
**MARRIAGE AND ON THE DATE OF LIVE BIRTH OR LEGAL ADOPTION OF EACH CHILD OF THE INSURED**

We agree, subject to written application and to the terms and conditions of this Provision and the policy, to issue an additional policy of insurance without evidence of insurability as of each Regular Purchase Date or Alternate Purchase Date, whichever is applicable, while the policy and this Provision are in full force. Each additional policy of insurance shall take effect as of the applicable Purchase Date, which shall be its Date of Issue, but only if the Insured is then living and only if payment of the first premium is made to us at our Home Office not later than the 31st day after the applicable Purchase Date and while the Insured is living.

This Provision is made a part of the policy to which it is attached, in consideration of the application, a copy of which is attached to and made a part of the policy, and payment of the premiums shown on page 3 of the policy applicable to this Benefit and the Life Insurance Benefit. The date of issue of this Provision is shown on page 3 of the policy.

Whenever premiums are waived under the policy in accordance with a disability benefit provision, we will waive premiums under this Provision.

The phrase "in full force" as applied to this Provision means it has not terminated.

## SPECIFICATIONS OF EACH ADDITIONAL POLICY

Each additional policy of insurance issued shall:

a. Insure only the life of the Insured, and

b. Be for a level amount of Sum Insured of not less than $10,000 nor more than the Purchase Limit under this Provision as shown on page 3 of this policy, and

c. Be on any level premium life or endowment plan which is available in the amount applied for and which (i) has premiums payable for a stated period ending before age 90 or (ii) if a preferred risk category is shown on page 3 of this policy, has premiums payable for life, and

d. Include a provision for waiver of premiums in the event of total disability if requested in the written application for the additional policy, provided that (i) a disability benefit is shown on page 3 of this policy, and that, (ii) unless a preferred risk category is shown on page 3 of this policy and the policy applied for has premiums payable for life or unless the plan of the policy applied for is Life Paid Up at Age 85, evidence satisfactory to us is furnished to our Home Office that the Insured is not totally disabled on the date written application is made for the additional policy, and

e. Include a provision for an Accidental Death Benefit if requested in the written application for the additional policy, provided that an Accidental Death Benefit is shown on page 3 of this policy. The amount of the Accidental Death Benefit shall not exceed the least of (i) the amount of Accidental Death Benefit as shown on page 3 of this policy, and (ii) our published limits for Accidental Death Benefit coverage in effect at the Date of Issue of the additional policy and (iii) twice the Sum Insured of the additional policy, and

f. Include only with our consent and subject to the conditions which we may determine any benefit other than the Life Insurance, Accidental Death and the disability benefit in accordance with the preceding paragraphs, and

g. Be on a form and at rates applicable to the additional policy at its Date of Issue with the Issue Age determined according to its Date of Issue, and

h. Be in the same risk classification according to the Premium Class shown on page 3 of this policy and also include the exceptions, exclusions and restrictions, if any, which are applicable to this policy.

## REGULAR PURCHASE DATES

Each policy anniversary after the date of issue of this Provision on which the Insured's age at his or her nearest birthday is 25, 28, 31, 34, 37 and 40, will be a Regular Purchase Date.

An application for each additional policy to be issued on a Regular Purchase Date shall be made in writing by the Insured and Owner on our prescribed form. Each additional policy will be issued only if the written application is received at our Home Office on, or within 31 days before or after, The Regular Purchase Date as of which an additional policy may be issued.

9317

## INTERIM TERM INSURANCE AS DEFINED AND LIMITED

Interim Term Insurance for the amount of the Purchase Limit shown on page 3 of this policy shall be in effect during each Interim Term Period which shall begin on (a) the date of the Insured's marriage and (b) the date of the birth of a live child of the Insured's marriage or the legal adoption of a child by the Insured, provided the applicable date is (i) after the date of issue of this Provision and (ii) before the latest Regular Purchase Date. Each Interim Term Period shall terminate on the earlier of (i) the last day of the period of 3 months beginning with the date of marriage or birth or legal adoption, unless the date of marriage or birth or legal adoption is the 29th, 30th or 31st day of a calendar month, in which event the last day of the 3rd calendar month from the date of marriage or birth or legal adoption or (ii) the date of termination of this Provision.

We agree, subject to the terms and conditions of this Provision and the policy, to pay the amount of Interim Term Insurance to the Beneficiary if the Insured's death occurs during an Interim Term Period and while the policy and this Provision are in full force.

We will make payment on receipt at our Home Office of due proof of (i) the Insured's death and (ii) the Insured's marriage or the live birth or legal adoption of the Insured's child.

We will pay any Interim Term Insurance in force at the Insured's death in addition to any amount that we will otherwise pay under the policy.

## ALTERNATE PURCHASE DATES

The day after the expiration of each Interim Term Period will be an Alternate Purchase Date. Exercise of the right to have an additional policy issued as of an Alternate Purchase Date shall cancel the right to have an additional policy issued as of the Corresponding Regular Purchase Date. A Corresponding Regular Purchase Date shall be the Regular Purchase Date, if any remains, which is (i) on or after the applicable Alternate Purchase Date and (ii) the next Regular Purchase Date for which the right to purchase an additional policy has not been exercised or cancelled.

An application for each additional policy to be issued on an Alternate Purchase Date shall be made in writing by the Insured and Owner on our prescribed form. We will issue each additional policy only if we receive the written application and due proof of the Insured's marriage or the birth or legal adoption of the child at our Home Office on, or within 31 days before or after, the Alternate Purchase Date as of which an additional policy may be issued.

## MULTIPLE BIRTHS AND ADOPTIONS

If more than one live child of the Insured's marriage is born on the same date or if more than one child is legally adopted by the Insured on the same date, (i) any Interim Term Insurance beginning on that date on the life of the Insured shall equal the amount of the Purchase Limit multiplied by the number of these children and (ii) the number of any additional policies which we may issue on the applicable Alternate Purchase Date shall equal the number of these live children born or legally adopted on the same date.

The several rights available on any one Alternate Purchase Date may be exercised in one application for one policy for the combined amount of additional insurance in place of two or more policies which would otherwise be issued in accordance with this Provision.

For the number of available rights exercised as of any one Alternate Purchase Date, we will cancel an equal number of rights applicable to Regular Purchase Dates.

## INCONTESTABILITY, SUICIDE

In applying the Incontestability and Suicide or Self Destruction provisions of the policy to this Insurance of Insurability Benefit Provision, we will measure the periods stated from the date of issue of this Provision.

## TERMINATION

This Provision will terminate without value on the earliest of

a. The lapse, exchange or termination of the policy, or
b. The maturity of the policy, or payment or application of the surrender value, or
c. The due date of the premium next following receipt at our Home Office of a request for discontinuance by written notice and presentation of the policy for adjustment, or
d. The policy anniversary nearest the Insured's 40th birthday, or
e. The application of dividend and interest credit under dividend option c to make the policy fully paid-up.

Signed for the Company at Boston, Massachusetts.

*John G. McElwee*

President

*Horace R. Baker*

Secretary

9317-2 Insurance of Insurability



## DISABILITY BENEFIT PROVISION
### WAIVER OF PREMIUMS IN EVENT OF INSURED'S TOTAL DISABILITY AS DEFINED AND LIMITED

The Company agrees, subject to the terms and conditions of this Provision and the Company, to waive the payment of premiums under this policy upon receipt at its Home Office of due proof of the Insured's total disability at that time and that

(1) The total disability began between the policy anniversaries nearest the Insured's 5th and 65th birthdays while the policy and this Provision were in full force, and

(2) The total disability has been continuous for at least 6 months.

This Provision is made a part of the policy to which it is attached, in consideration of the application, a copy of which is attached to and made a part of the policy, and payment of the premiums specified on page 3 of the policy applicable to this Benefit and the Life Insurance Benefit. The date of issue of this Provision is specified on page 3 of the policy.

The waiver of any premium will not reduce any amount payable under the policy or any dividend apportioned to it.

### TOTAL DISABILITY DEFINED
Wherever used in this Provision the phrase "total disability" is defined as follows:

a. If the Insured has attained age 16, for the first 24 months "total disability" means only such incapacity of the Insured as a result of bodily injury or disease or mental disease that he is able to perform none of the duties of his occupation or employment, and for the remainder of any such period of continuous disability, "total disability" means only such incapacity of the Insured as a result of bodily injury or disease or mental disease that he is able to perform none of the duties of any occupation or employment for remuneration or profit for which he is reasonably fitted by education, training, or experience, and such incapacity extends to every such occupation or employment, or

b. If the Insured has not attained age 16, "total disability" means only such incapacity of the Insured as a result of bodily injury or disease or mental disease that he is unable to attend school;

provided, however, that the total and irrecoverable loss by the Insured of the sight of both eyes or of the use of both hands or both feet or one hand and one foot shall be deemed to constitute "total disability" irrespective of whether the Insured engages in his or any other occupation or employment for remuneration or profit or is able to attend school.

### BEGINNING OF PERIOD OF WAIVER OF PREMIUMS
Premiums will be waived for the period commencing with the policy month following (i) the date total disability began between the policy anniversaries nearest the Insured's 5th and 65th birthdays or (ii) the date 1 year before written notice of claim is received, whichever month is later. The portion of any premium paid for a part of the period for which premiums are waived will be refunded.

The Company may pay any refund due the Insured to a person who in the Company's judgment is responsible for the welfare of the Insured and equitably entitled to receive the refund.

### END OF MAXIMUM PERIOD OF WAIVER OF PREMIUMS
The maximum period for which premiums will be waived shall end as follows:

(1) If total disability begins before the policy anniversary nearest the Insured's 60th birthday, the date of cessation of total disability, or

(2) If total disability begins on or after the policy anniversary nearest the Insured's 60th birthday, the earlier of (i) the date of cessation of total disability or (ii) the day before the policy anniversary nearest the Insured's 65th birthday.

### EXCEPTIONS AND EXCLUSIONS
No premiums will be waived

(1) If the total disability begins within 2 years after the date of issue of this Provision and results from a bodily injury sustained or a disease contracted before the date of issue of this Provision;

(2) If the total disability has ceased or the Insured's death has occurred prior to receipt of due proof of total disability;

(3) If the total disability results wholly or partially from (i) willfully and intentionally self-inflicted injury or (ii) service in an armed force of any international organization, or any country or combination of countries at war whether declared or undeclared;

(4) If the due proof of total disability is not received before this Provision terminates, subject, however, to the provisions of the following paragraph.

Failure to furnish due proof of total disability within the time required shall not invalidate or reduce any claim if

9237

it was not reasonably possible to give proof within the time required, provided due proof is furnished as soon as reasonably possible, and in no event, except in the absence of legal capacity, later than 1 year after the date due proof is otherwise required.

## WRITTEN NOTICE OF CLAIM

Written notice of claim may be filed with the Company to determine the beginning of the period for which benefits are provided, but no benefit will commence until the required due proof of total disability is received.

In any case in which written notice of total disability is filed more than 1 year after total disability began, benefits will commence as if written notice had been filed within 1 year if it is shown that it was not reasonably possible to furnish written notice to the Company sooner and that it was furnished as soon as was reasonably possible.

## PROOF OF CONTINUANCE OF TOTAL DISABILITY

The Company shall have the right to require proof of the continuance of total disability at reasonable intervals during the first 2 years following receipt of due proof. After 2 years proof will be required not oftener than once a year. After the policy anniversary nearest the Insured's 65th birthday no further proof will be required if the period of total disability began before and has been continuous since the policy anniversary nearest the Insured's 60th birthday.

As part of any proof, the Insured may be required to be examined by a medical examiner designated by the Company at its expense.

## RESUMPTION OF PREMIUM PAYMENTS

The period for which premiums will be waived will terminate and the payment of the premiums specified on page 3 of the policy shall be resumed beginning with the policy month following the earliest of

a. Failure to furnish proof of the continuance of total disability when required, or

b. Failure of the Insured to be examined medically when required, or

c. The end of the period for which premiums will be waived as provided in the "End of Maximum Period of Waiver of Premiums" section of this Provision.

## INCONTESTABILITY

This Disability Benefit Provision shall be incontestable after it has been in force during the lifetime of the Insured and without the occurrence of the total disability of the Insured, for 2 years from its date of issue which is specified on page 3 of the policy, except for nonpayment of premium.

## TERMINATION

This Provision will terminate upon the earliest of

a. The lapse, exchange or termination of the policy, or

b. The expiry or maturity of the policy, or payment or application of the surrender value, or

c. The due date of the premium next following receipt at the Company's Home Office of a request for discontinuance by written notice and presentation of the policy for adjustment, or

d. The Insured's death or the policy anniversary nearest the Insured's 65th birthday except with respect to benefits for total disability which began before the policy anniversary nearest the Insured's 60th birthday, or

e. The application of dividend and interest credit under dividend option c to make the policy fully paid-up.

**Signed for the Company at Boston, Massachusetts.**

President

Secretary

9237-2 Disability-Waiver of Premiums

Waiver of Premiums

COPY ON POLICY

AMENDMENT TO APPLICATION

*John Hancock*
MUTUAL LIFE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

Policy No._____

Insured or
Proposed Insured _____

(In this instrument the words "Insured" and "Policy" shall be construed to mean "Annuitant" and "Annuity Contract" if appropriate.)

It is requested that the application with respect to the above-numbered policy be amended as follows:

Dated_____19___

*Victoria Mattarocchia*

Form 174R (I)

Ed. 6-69 Printed in U. S. A.

No. 0308021

**Application to the John Hancock Mutual Life Insurance Company — Part A — Statements to Company's Agent**

Page 1 — Statements to Company's Agent

Page 2 — Statements to Company's Agent (Continued)

a. Name of proposed insured: (PRINT)
ANNE MATTAROCCHIA

b. Sex: F   c. Date of Birth: 10.25.59   Place of Birth: San Diego, Ca

d. Amount: $20,000   Premium Class: ☒ Standard ☐ Special

One Year Term — Dividend Option ▸

Part B — Statements to Company or Agent (Continued)

21. Give information indicated as to proposed insured now in force:

22. Details of Answers to Questions 5 thru 20:

23. State any special requests:

**Agreement**

All statements and answers in this application are to the best of my knowledge and belief, true and complete, and assent to the application.

Signature of proposed insured, if other than the Applicant

Dated at San Diego, Ca   on   Nov. 4.2002.

INSURED   CHARLES D. MATTAROCCHIA
husband, if living, otherwise
Moses Chavez, father, and
Alicia Chavez, mother, equally,
or the survivor.



The INSURED, by virtue of this policy, is a member of the John Hancock Mutual Life Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of the Company. The annual meetings are held at the Company's Home Office on the second Monday of February in each year, at twelve o'clock noon.

Communications about this policy may be sent to the Company at John Hancock Place, Boston, Massachusetts 02117. or to any agency office of the Company.

Life policy with premiums payable to end of stated period or to Insured's death, if earlier

Sum Insured payable at death

Annual dividends

Schedules of benefits and premiums. and the premium class. are shown on page 3

2

 Mutual Life  

John Hancock Place
Boston, Massachusetts  02117

| ANNUITANT | ᵀVICTORIA MATTAROCCHIA | SP5001772 | ANNUITY NUMBER |
|---|---|---|---|
| | | $776.64 | MONTHLY ANNUITY |
| DATE OF ISSUE | ! MARCH 28, 1982 | MARCH 28, 2020 | PROVISIONAL DATE OF MATURITY |

# Individual Annuity

The John Hancock Mutual Life Insurance Company agrees, subject to the conditions and provisions of this contract, to pay at its Home Office in Boston, Massachusetts, a Monthly Annuity or a Death Benefit, and to provide the other Benefits, Rights and Privileges of the contract.

A Monthly Annuity will be paid to the Annuitant, until otherwise directed by the Owner, beginning on the Date of Maturity if the contract is then in force. The Monthly Annuity payment shall be determined in accordance with the Accumulation Provisions of this contract. The Monthly Annuity will continue at and for monthly intervals for a period of 10 years and as long thereafter as the Annuitant lives.

The Date of Maturity shall be as elected by the Owner by written notice at any time before the Provisional Date of Maturity provided the Date elected is: (i) not more than 5 years after the Provisional Date of Maturity; (ii) at least 31 days after the written notice; and (iii) on or after the Annuitant's 55th birthday. The Provisional Date of Maturity shall be the Date of Maturity if no other election is made.

A Death Benefit will be payable if the Annuitant's death occurs while the contract is in force, subject to the "Death Benefit" and other contract provisions.

This contract is issued in consideration of the application and the payment of the premiums.

The Contract Specifications on page 3 and the conditions and provisions on this and the following pages are part of the contract.

**10 Day Right to Cancel — This contract may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the contract shall be deemed void from the beginning. Any premium paid on it will then be refunded within 10 days.**

Signed for the Company at Boston, Massachusetts.

*E James Morton*
President

*Horace R Baker Jr*
Secretary

Single Premium Annuity for Retirement Plans with optional additional premium payments — Monthly Annuity payable to Annuitant beginning on Date of Maturity for a guaranteed period of 10 years and thereafter for life

Nonparticipating

Schedules of benefits and premiums are shown on page 3

Form 81-67

**Contract Provisions**

Section

1 Definitions
2 Contract Specifications
3 Owner, Beneficiary
4 Payment of Premiums, Grace Period
5 Reinstatement
6 Annuity Payment and Settlement Provisions
7 Death Benefit
8 Accumulation Provisions
9 Surrender Value and
  Basis of Computations
10 Partial Surrenders
11 Surrender Charge
12 Interest on Proceeds
13 Claims of Creditors
14 Assignment
15 Incontestability
16 Misstatement of Age or Sex
17 Proof Required for Commencement and for
   Continuation of Annuity Payments
18 The Contract
19 Miscellaneous

**Alphabetical Guide**

Section

8 Accumulation Provisions
6 Annuity Payment and Option Limitations
14 Assignment
9 Basis of Computations
3 Beneficiary
13 Claims of Creditors
18 Contract
2 Contract Specifications
8 Conversion of Accumulated Value
4 Date of Crediting
7 Death Benefit
1 Definitions
4 Flexible Premium Provision
4 Grace Period
15 Incontestability
12 Interest on Proceeds
16 Misstatement of Age or Sex
2,6 Monthly Annuity on Date of Maturity
6 Monthly Annuity Option Table
8 Net Premium
6 Optional Methods of Settlement
3 Owner
10 Partial Surrenders
4 Payment of Premiums
2,4 Premium
17 Proof Required for Commencement and
   for Continuation of Annuity Payments
5 Reinstatement
6 Settlement Provisions
11 Surrender Charge
9 Surrender Value
9 Table of Values

---

## 1. DEFINITIONS

"We", "us" and "our" refer only to the John Hancock Mutual Life Insurance Company.

"You" and "your" refer only to the Owner of this contract.

"Payment" means, unless otherwise stated, payment at our Home Office in Boston, Massachusetts.

"Written notice" means, unless otherwise stated, a written notice received at our Home Office in Boston, Massachusetts.

"In force" except with respect to any provision for a disability benefit, means that the Annuitant is living and the surrender value of the contract has not become payable.

"Accumulated Value" means the value of this contract, as determined in accordance with Section 8 of this contract, on or before the date annuity payments commence.

2. CONTRACT SPECIFICATIONS

2

## 2. CONTRACT SPECIFICATIONS

235

ISSUE AGE 27  ANNUITANT VICTORIA MATTAROCCHIA

SP5001772   ANNUITY NUMBER

$776.64   MONTHLY ANNUITY †

DATE OF ISSUE    MARCH 28, 1982

MARCH 28, 2020   PROVISIONAL DATE
                 .OF MATURITY

SCHEDULE OF BENEFITS

MONTHLY ANNUITY
BEGINNING ON DATE OF MATURITY

SCHEDULE OF PREMIUMS

| | PAYABLE | AMOUNT |
|---|---|---|
| FIRST | | $1,500.00 |
| SUBSEQUENT ANNUALLY TO DATE OF MATURITY | | $1,500.00 |

*John Hancock*

† If premium payments are paid as due in accordance with the Schedule of Premiums shown above.

3

301-401

### 3.  OWNER, BENEFICIARY

The Owner and the Beneficiary will be as shown in the application unless: (i) you change them; or (ii) they are changed by the terms of this provision.

If the Annuitant dies and there is no surviving Beneficiary, you will be the Beneficiary; but if you were the Annuitant, your estate will be the Beneficiary.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person except: (i) as otherwise provided by this contract; or (ii) unless you provide otherwise by written notice.

While the Annuitant is alive, you may change the Owner by written notice. You may change the Beneficiary by written notice no later than receipt of the required due proof of the Annuitant's death. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not you or the Annuitant is then alive. A change shall be: (i) subject to the rights of any assignee of record with us; and (ii) subject to any payment made or other action taken by us before we acknowledged receipt.

### 4.  PAYMENT OF PREMIUMS, GRACE PERIOD

**PAYMENT**

Premiums are payable as shown on page 3; but they may be paid at other intervals in accordance with our published requirements in effect at the Date of Issue. A change in the interval of premium payment will take effect on receipt of written notice of the change. Each premium is due and payable in advance on the first day of its interval of premium payment.

Payment of premiums shall be made to us at our Home Office. Receipts will be delivered on request in exchange for premium payments. They will be valid only if signed by the President or the Secretary.

**GRACE PERIOD**

Any premium not paid when due may be paid within a grace period of 31 days after its due date. If a premium is not paid before the end of the grace period, that premium is in default. The date of premium default is the day following the end of the grace period. If the Annuitant is living and the surrender value of this contract has not become payable, this contract will continue in force during the grace period. Except for any provision for a disability benefit, this contract will continue in force while any premium is in default.

**DATE OF CREDITING**

We will credit a premium as of the date it is received.

**FLEXIBLE PREMIUM PROVISION**

The first premium is shown on page 3. Subsequent premiums may vary in amount at your option, but:
1. No premium may be less than $50; and
2. If this contract contains a provision for a disability benefit:
   a.  The total amount which may be paid for premiums due in the first contract year may not exceed 200% of the total amount of premiums, as shown on page 3, for the first contract year; and
   b.  The total amount which may be paid for premiums due in any contract year after the first may not exceed 200% of the total amount actually paid for premiums due in any previous contract year.
3. If this contract does not contain any provision for a disability benefit, the same limitations apply as for contracts containing such a provision. However, these limits may be exceeded with our written consent.

### 5.  REINSTATEMENT

If: (i) a premium is in default; and (ii) we have not paid the Surrender Value as provided under Section 9 of this contract, this contract, except for any provision for a disability benefit, may be reinstated during the lifetime of the Annuitant and before the Date of Maturity by the payment of at least one premium.

5

535-629

## 6. ANNUITY PAYMENT AND SETTLEMENT PROVISIONS

**MONTHLY ANNUITY ON DATE OF MATURITY**

We shall make the Monthly Annuity payments provided on the first page of this contract as a Life Annuity with Payments for a Guaranteed Period of 10 Years unless one of the following options is chosen. We shall determine the amounts of the annuity payments in accordance with the provisions of this section and of Section B, with the Annuitant as the Payee.

**OPTIONAL METHODS OF SETTLEMENT**

In place of: (i) the Monthly Annuity as provided on the first page of this contract; or (ii) in place of a single payment in case of either death or surrender prior to the date annuity payments commence, proceeds of an amount of $2,000 or more payable under this contract may be left with us in accordance with: (i) one of the following options; and (ii) the terms of a supplementary agreement to be issued when the option becomes effective:

**Option A** — Life Annuity with Payments for a Guaranteed Period, as selected from the Monthly Annuity Option Table. If the Payee's death occurs within the guaranteed period, we will pay the commuted value of the annuity payments remaining unpaid in the guaranteed period (on the basis of the assumed interest rate of 3¾% a year) to the Contingent Payee, if any; otherwise to the estate of the Payee, as a final payment.

**Option B** — Life Annuity without Refund at the death of the Payee of any part of the amount applied under this Option.

**Option C** — Life Annuity with Cash Refund at the death of the Payee of the amount, if any, equal to: (i) the amount applied under this Option; less (ii) the sum of all annuity payments made. We will pay the Cash Refund to the Contingent Payee, if any; otherwise to the estate of the Payee, as a final payment.

The first payment under Option A, B or C will be payable as of the date the value from the contract is applied under the Monthly Annuity Option Table.

You may choose an option by written notice before the death of the Annuitant and before the commencement of life annuity payments. If you have made no choice before the death of the Annuitant, the Beneficiary may make a choice by written notice before the proceeds become payable.

**ANNUITY PAYMENT AND OPTION LIMITATIONS**

If the amount of the first Monthly Annuity payment or the amount of the first annuity payment under any option would be less than $25, we may make a single payment equal to the Accumulated Value on the date the first payment would be payable in place of all other benefits provided by this contract. We will make the single payment to the Beneficiary if the Payee under any option chosen is the Beneficiary; otherwise to you or at your direction.

Annuity payments will be based on the life of the Payee. While the Annuitant is living, the Payee will be the Annuitant and, unless otherwise provided by written notice, the Contingent Payee will be the Beneficiary. If the Annuitant is not living, the Payee will be the Beneficiary and any Contingent Payee will be the person so designated in the election and in accordance with the terms of the supplementary agreement.

These options are not available without our consent if the proceeds are payable to: an executor; administrator; trustee; corporation; partnership; or association.

6

**MONTHLY ANNUITY OPTION TABLE**
Amount of Monthly Annuity Provided by each $1000 of Proceeds Applied

| Age of Payee on Birthday Nearest Date of First Payment | | Option A — Life Annuity with Guaranteed Period | | | | Option B — Life Annuity without Refund | Option C — Life Annuity with Cash Refund |
|---|---|---|---|---|---|---|---|
| Male | Female | 5 Years | 10 Years | 15 Years | 20 Years | | |
| — | 55 | 4.92 | 4.86 | 4.76 | 4.64 | 4.94 | 4.65 |
| — | 56 | 5.00 | 4.94 | 4.83 | 4.69 | 5.02 | 4.71 |
| — | 57 | 5.09 | 5.02 | 4.90 | 4.75 | 5.12 | 4.78 |
| — | 58 | 5.19 | 5.10 | 4.98 | 4.81 | 5.21 | 4.85 |
| — | 59 | 5.28 | 5.19 | 5.05 | 4.87 | 5.32 | 4.93 |
| 55 | 60 | 5.39 | 5.29 | 5.13 | 4.93 | 5.42 | 5.01 |
| 56 | 61 | 5.50 | 5.38 | 5.21 | 4.99 | 5.54 | 5.09 |
| 57 | 62 | 5.61 | 5.48 | 5.29 | 5.05 | 5.65 | 5.17 |
| 58 | 63 | 5.73 | 5.59 | 5.38 | 5.11 | 5.78 | 5.27 |
| 59 | 64 | 5.86 | 5.70 | 5.46 | 5.17 | 5.91 | 5.36 |
| 60 | 65 | 5.99 | 5.82 | 5.55 | 5.23 | 6.06 | 5.46 |
| 61 | 66 | 6.14 | 5.94 | 5.65 | 5.29 | 6.21 | 5.57 |
| 62 | 67 | 6.29 | 6.07 | 5.74 | 5.34 | 6.37 | 5.68 |
| 63 | 68 | 6.45 | 6.20 | 5.83 | 5.40 | 6.54 | 5.79 |
| 64 | 69 | 6.62 | 6.34 | 5.93 | 5.46 | 6.72 | 5.92 |
| 65 | 70 | 6.81 | 6.49 | 6.03 | 5.51 | 6.92 | 6.05 |
| 66 | 71 | 7.00 | 6.64 | 6.13 | 5.56 | 7.13 | 6.19 |
| 67 | 72 | 7.21 | 6.80 | 6.22 | 5.60 | 7.36 | 6.33 |
| 68 | 73 | 7.43 | 6.96 | 6.32 | 5.65 | 7.60 | 6.49 |
| 69 | 74 | 7.66 | 7.13 | 6.41 | 5.69 | 7.87 | 6.65 |
| 70 | 75 | 7.91 | 7.30 | 6.50 | 5.72 | 8.15 | 6.82 |
| 71 | 76 | 8.18 | 7.47 | 6.59 | 5.76 | 8.45 | 7.02 |
| 72 | 77 | 8.46 | 7.65 | 6.68 | 5.78 | 8.78 | 7.21 |
| 73 | 78 | 8.76 | 7.83 | 6.76 | 5.81 | 9.14 | 7.41 |
| 74 | 79 | 9.08 | 8.02 | 6.83 | 5.83 | 9.52 | 7.64 |
| 75 | 80 | 9.41 | 8.20 | 6.90 | 5.84 | 9.93 | 7.87 |
| 76 | 81 | 9.76 | 8.38 | 6.96 | 5.85 | 10.38 | 8.12 |
| 77 | 82 | 10.13 | 8.55 | 7.01 | 5.86 | 10.87 | 8.40 |
| 78 | 83 | 10.52 | 8.72 | 7.06 | 5.87 | 11.39 | 8.68 |
| 79 | 84 | 10.93 | 8.89 | 7.10 | 5.87 | 11.96 | 8.98 |
| 80 | 85 & over | 11.35 | 9.05 | 7.13 | 5.87 | 12.58 | 9.34 |
| 81 | | 11.79 | 9.19 | 7.16 | 5.88 | 13.26 | 9.68 |
| 82 | | 12.25 | 9.33 | 7.18 | 5.88 | 13.99 | 10.05 |
| 83 | | 12.72 | 9.45 | 7.19 | 5.88 | 14.80 | 10.52 |
| 84 | | 13.21 | 9.56 | 7.20 | 5.88 | 15.68 | 10.94 |
| 85 & over | | 13.71 | 9.65 | 7.21 | 5.88 | 16.67 | 11.41 |

These options are available only at the ages shown in the table

7

742-829

## 7.  DEATH BENEFIT

On receipt at our Home Office of due proof of the death of the Annuitant, we will determine the amount of any Death Benefit payable as follows:

**a.   Death Benefit Before Date of Maturity**

If the Annuitant dies before the Date of Maturity, we will pay the Death Benefit to the Beneficiary. The Death Benefit will equal the greater of: (i) the Accumulated Value as of the date of the Annuitant's death; and (ii) the amount of the premiums paid less the amount of any partial surrenders made under the Partial Surrenders provision.

**b.   Death Benefit During Guaranteed Period of Annuity Payments**

If the Annuitant dies within the guaranteed period of 10 years beginning on the date the Monthly Annuity becomes payable, we will pay a single final payment to the Beneficiary. The single payment will equal the Monthly Annuity payments remaining to be paid for the balance of the guaranteed period of 10 years, discounted at the rate assumed in determining the payments, but not less than 3¾% a year, to the date on which the last payment, if any, was made, or the date the first payment was due if none has been made.

## 8.   ACCUMULATION PROVISIONS

### NET PREMIUM

The net premium is the premium paid less the premium for any disability benefit and less any applicable taxes based on the amount of premium payment.

### ANNUAL SERVICE FEE

An annual service fee of $25 will be charged at the end of each contract year, but no charge will be made which results in an accumulation of premiums at less than the guaranteed minimum interest rate.

### ACCUMULATION OF PREMIUMS

We will accumulate each net premium with interest from the date the premium is received. The Accumulated Value on any date prior to the date annuity payments commence, including a date on which premiums under this contract are in default, is the sum of the net premiums accumulated with interest to that date less any partial surrenders accumulated with interest from the date of surrender to that date, and less annual service fees accumulated with interest to that date. The interest rate used will be the greater of: (i) the applicable rate that we declare; and (ii) an annual rate of 4%.

### CONVERSION OF ACCUMULATED VALUE

On the Date of Maturity or other date elected for commencement of annuity payments, we will convert the Accumulated Value of the contract into a monthly annuity. Annuity payments will then commence subject to Annuity Payment and Settlement Provisions and all other applicable provisions. We will determine the monthly annuity by multiplying the Accumulated Value on the date elected for commencement of annuity payments by the applicable factor from the Monthly Annuity Option Table. The resultant monthly annuity will not be less than that available by applying the Accumulated Value to purchase a single consideration immediate annuity from us.

## 9.   SURRENDER VALUE AND BASIS OF COMPUTATIONS

### SURRENDER VALUE

We will pay the Accumulated Value of this contract less any surrender charge as a surrender value on receipt at our Home Office, before the Annuitant's death and before the commencement of annuity payments, of written notice requesting the payment. The Accumulated Value will be determined and payable by us as of the date of receipt of written notice.

We may defer the payment of any surrender value for the period provided by law. But we will not defer payment more than 6 months beyond the date we receive written notice. If we defer payment for more than 29 days we will pay interest on the surrender value at the rate of 3½% a year for the period we defer the payment.

742-829

## TABLE OF VALUE

The values shown apply at the end of the contract year. They represent a minimum surrender value only: (a) if annual premiums are paid as due to that date; (b) if the guaranteed minimum interest rate is applicable; and (c) if no partial surrender has been made. We will determine the values at a date other than the end of a contract year as of the end of a contract month in a manner consistent with that used to determine the values below. We will determine the values for premiums payable other than annually in a manner consistent with that used to determine the values below.

### CONTRACT SURRENDER VALUE FOR $1000 OF ANNUAL PREMIUM†

| End of Contract Year* | Amount | End of Contract Year* | Amount | End of Contract Year* | Amount | End of Contract Year* | Amount |
|---|---|---|---|---|---|---|---|
| 1 | 974.48 | 16 | 22,381.79 | 31 | 61,385.74 | 46 | 131,629.63 |
| 2 | 1,996.63 | 17 | 24,329.69 | 32 | 64,893.80 | 47 | 137,947.44 |
| 3 | 3,068.75 | 18 | 26,355.51 | 33 | 68,542.18 | 48 | 144,517.97 |
| 4 | 4,193.25 | 19 | 28,462.36 | 34 | 72,336.50 | 49 | 151,351.32 |
| 5 | 5,372.64 | 20 | 30,653.48 | 35 | 76,282.59 | 50 | 158,458.00 |
| 6 | 6,609.55 | 21 | 32,932.25 | 36 | 80,386.52 | 51 | 165,848.95 |
| 7 | 7,906.73 | 22 | 35,302.17 | 37 | 84,654.61 | 52 | 173,535.54 |
| 8 | 9,267.09 | 23 | 37,766.88 | 38 | 89,093.42 | 53 | 181,529.59 |
| 9 | 10,690.40 | 24 | 40,330.18 | 39 | 93,709.78 | 54 | 189,843.40 |
| 10 | 12,170.64 | 25 | 42,996.02 | 40 | 98,510.80 | 55 | 198,489.76 |
| 11 | 13,710.09 | 26 | 45,768.49 | 41 | 103,503.86 | 56 | 207,481.98 |
| 12 | 15,311.12 | 27 | 48,651.86 | 42 | 108,696.64 | 57 | 216,833.89 |
| 13 | 16,976.19 | 28 | 51,650.56 | 43 | 114,097.13 | 58 | 226,559.87 |
| 14 | 18,707.87 | 29 | 54,769.21 | 44 | 119,713.64 | 59 | 236,674.89 |
| 15 | 20,508.81 | 30 | 58,012.61 | 45 | 125,554.81 | 60 | 247,194.51 |

\* The last contract year applicable to this annuity contract ends on the day before the Date of Maturity; there is no cash value on or after the Date of Maturity.

† Exclusive of any premium tax and any premium for a disability benefit.

## BASIS OF COMPUTATIONS

The reserves for this contract after the commencement of life annuity payments are based on the 1971 Individual Annuity Mortality Table rated at an age five years younger for females. Interest is at the rate of 3¾% a year.

## 10.  PARTIAL SURRENDERS

Subject to the surrender limits, you may request a surrender of less than the surrender value. The total of the requested amount and any surrender charge made is called a partial surrender. We will pay the requested amount on receipt of written notice before the Annuitant's death and before the commencement of annuity payments. The amount of the partial surrender will then be deducted from the Accumulated Value. We will permit no partial surrender which would be less than $100 nor which would reduce the Accumulated Value to less than $500. No more than one partial surrender may be made in any contract year.

We may defer the payment of any partial surrender in the same manner as we may defer the payment of the surrender value.

## 11.  SURRENDER CHARGE

For purposes of determining the surrender charge: (a) surrenders and partial surrenders will be applied against each net premium accumulation in the order that the net premiums were paid; and (b) each net premium accumulation will be treated as if the entire accumulation existed on the date the premium was paid.

9

There will be no surrender charge on the first 10% of Accumulated Value paid as a surrender value or as a partial surrender in each contract year.

For surrenders in each contract year in excess of this amount, the following surrender charges will apply:

| Time from net premium payment to date of surrender | Charges on excess amount surrendered |
|---|---|
| More than 7 years | No charge |
| More than 6 years, but less than 7 years | 1% |
| More than 5 years, but less than 6 years | 2% |
| More than 4 years, but less than 5 years | 3% |
| More than 3 years, but less than 4 years | 4% |
| More than 2 years, but less than 3 years | 5% |
| More than 1 year, but less than 2 years | 6% |
| 1 year or less | 7% |

## 12.  INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the Annuitant's death from the date of death to the date of payment. The rate of interest will be the greater of 3½% a year and the rate currently credited to funds left on deposit under an interest income settlement option.

## 13.  CLAIMS OF CREDITORS

The proceeds and all other payments under the contract will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## 14.  ASSIGNMENT

You may assign your interest in this contract, except as otherwise provided, without the consent of any revocable Beneficiary. Your interest, any interest of the Annuitant and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been filed at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

If the application indicates the contract is subject to assignment restrictions for Federal Income Tax purposes, this contract shall not be sold, assigned, discounted, or pledged as collateral for a loan or as security for the performance of an obligation or for any other purpose, to any person other than us.

## 15.  INCONTESTABILITY

This contract, except any provision for a disability benefit, shall be incontestable after it has been in force for 1 year from its Date of Issue, except for nonpayment of premium.

## 16.  MISSTATEMENT OF AGE OR SEX

If the age or the sex of the person on whose life the annuity payments are based has been misstated, we will adjust the amount of each annuity payment and every other benefit to that which the premium paid would have purchased at the correct age and sex. Any overpayment shall be repaid to us and any underpayment shall be paid to the person on whose life annuity payments are based. In either case interest will be paid at the rate of 6% a year to the date of payment.

932-130

17.  PROOF REQUIRED FOR COMMENCEMENT AND FOR CONTINUATION OF

## 17. PROOF REQUIRED FOR COMMENCEMENT AND FOR CONTINUATION OF ANNUITY PAYMENTS

Before making the first annuity payment, we shall have the right to require proof of the correct age of the person on whose life the annuity payments are based. We shall also have the right to require proof that this person is living on the date each annuity payment is due.

## 18. CONTRACT

The entire contract between the applicant and us consists of this contract and the written application, a copy of which is attached at issue. All statements made in the application shall be deemed representations and not warranties. We will use no statement made by or on behalf of the Annuitant to defend a claim under the contract unless it is in the written application.

Contract years, contract months and contract anniversaries are measured from the Date of Issue.

Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the contract, or to extend credit or to make an agreement for us.

## 19. MISCELLANEOUS

We will furnish you with reports, as required by applicable law, including a statement of the Accumulated Value of this contract.

If the application specifies that this contract is applied for under a plan or arrangement intended to meet the requirements of the Internal Revenue Code, we may request at any time and from time to time prior to the commencement of annuity payments that you or the Annuitant or both furnish evidence that the retirement plan (in connection with which this contract was issued as indicated in the application) was qualified or met the requirements for the intended favorable Federal tax treatment as of the Date of Issue. If evidence satisfactory to us is not received at our Home Office within 90 days after the date of a request or if we receive notice that the plan did not so qualify or meet the requirements, we may, in the calculation of the Accumulated Value, apply under Section 8 of this contract, a rate of interest less than that applied to plans that did qualify or meet the requirements for favorable Federal tax treatment. We assume no responsibility for determining whether a particular retirement plan is qualified or meets the requirements of the applicable tax laws.

11

01 MARKETING
PAGE 27
RESIDENT CALIFORNIA
INDIVIDUAL RETIREMENT ANNUITY

THE GENERATOR
PREPARED FOR: V MATTAROCCHIA
PREPARED BY: S CHEEK
ANNUAL PAYMENT OF 1500.00 NOT INCLUDING DISABILITY BENEFIT.

DATE 05/06/82
AGENCY 500
AGENT 14018

| 1 END OF PLAN YEAR | 2 TOTAL PREMIUMS PAID | 3 GUARANTEED SURRENDER VALUE | 4 GUARANTEED ACCUMULATIONS | 5 CURRENT SURRENDER VALUE | 6 CURRENT VALUE IF LEFT ON DEPOSIT | 7 AT AGE 65 IF NO MORE PAYMENTS |
|---|---|---|---|---|---|---|
| 1 | 1500 | 1454 | 1552 | 1587 | 1668 | 160987 |
| 2 | 3000 | 2979 | 3166 | 3377 | 3563 | 322706 |
| 3 | 4500 | 4580 | 4805 | 5426 | 5713 | 465190 |
| 4 | 6000 | 6258 | 6591 | 7773 | 8153 | 590725 |
| 5 | 7500 | 8018 | 8407 | 10458 | 10923 | 701350 |
| 6 | 9000 | 9864 | 10295 | 13533 | 14066 | 790780 |
| 7 | 10500 | 11800 | 12259 | 17053 | 17635 | 884630 |
| 8 | 12000 | 13831 | 14302 | 21083 | 21604 | 960204 |
| 9 | 13500 | 15955 | 16426 | 25679 | 26281 | 1026932 |
| 10 | 15000 | 18164 | 18635 | 30896 | 31498 | 1085653 |
| 11 | 16500 | 20462 | 20933 | 36017 | 37619 | 1137390 |
| 12 | 18000 | 22851 | 23323 | 43538 | 44139 | 1182973 |
| 13 | 19500 | 25336 | 25808 | 51166 | 51767 | 1223134 |
| 14 | 21000 | 27921 | 28392 | 59823 | 60425 | 1258518 |
| 15 | 22500 | 30609 | 31080 | 69650 | 70251 | 1289694 |
| 16 | 24000 | 33404 | 33876 | 80003 | 81404 | 1317161 |
| 17 | 25500 | 36312 | 36783 | 93461 | 94063 | 1341362 |
| 18 | 27000 | 39335 | 39806 | 107829 | 108630 | 1362604 |
| 19 | 28500 | 42480 | 42951 | 124136 | 124728 | 1380670 |
| 20 | 30000 | 45750 | 46221 | 142645 | 143246 | 1398021 |
| AGE 60 | 49500 | 102299 | 102770 | 794236 | 794840 | 1496690 |
| 62 | 52500 | 113051 | 114322 | 1026894 | 1027496 | 1501994 |
| 65 | 57000 | 132971 | 133443 | 1507450 | 1508052 | 1507450 |
| 70 | 64500 | 170290 | 170761 | 2850868 | 2851470 | |

MONTHLY RETIREMENT INCOME (10 C&C)

| AGE | GUARANTEED | CURRENT |
|---|---|---|
| 60 | 543.66 | 6485.90 |
| 62 | 626.49 | 8620.69 |
| 65 | 776.64 | 13225.62 |
| 70 | 1108.24 | 27060.45 |

*FIGURES SHOWN ASSUME THAT THE PREMIUM SPECIFIED WILL BE APPLIED ON THE FIRST DAY OF EACH PAYMENT INTERVAL.
"CURRENT" FIGURES ARE BASED ON THE CURRENT 13.50 PERCENT INTEREST RATE AND LIFE INCOME RATES. THEY REFLECT CURRENT EXPERIENCE AND ARE NOT GUARANTEED. MONTHLY LIFE INCOMES ARE SHOWN ON A 10 YEAR CERTAIN AND CONTINUOUS BASIS.
THIS ILLUSTRATION REFLECTS A STATE PREMIUM TAX OF 0.50 PERCENT.

PREPARED ON ELECTRONIC COMPUTERS
AT THE HOME OFFICE

John Hancock Mutual Life Insurance Company

P. 472

G00001   **John Hancock**
MUTUAL LIFE INSURANCE COMPANY
BOSTON, MASSACHUSETTS

COPY ON POLICY
AMENDMENT TO APPLICATION

Policy No. ___SP50017772_____        Insured or
                                         Proposed Insured ___VICTORIA MATTAROCCHIA_____

(In this instrument the words "Insured" and "Policy" shall be construed to mean "Annuitant" and "Annuity Contract" if appropriate.)

It is requested that the application with respect to the above-numbered policy be amended as follows:

ANSWER TO QUESTION 9. OF THE APPLICATION TO READ: " AMOUNT OF SINGLE PREMIUM $1500.00 "

ANSWER TO QUESTION 10a. OF THE APPLICATION TO READ: " 3-28-82 "

ANSWER TO QUESTION 10b. OF THE APPLICATION TO READ: " 65th "

ANSWER TO QUESTION 12. OF THE APPLICATION TO READ: " FUTURE BILLING TO BE  $1500.00 "

Dated____MARCH 31,_____19 82        /s/_____

Form 174R (I)                                    Ed. 6-69 Printed in U. S. A.

**1. Proposed Annuitant: (PRINT)**

a. Victoria     Mattorocchia
First Name    Middle Initial    Last Name

b. Social Security Number 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

c. Date of Birth    d. Place of Birth
12/31/51    If U.S.   CA   If Other
Month Day Year    State    Country

e. Sex: ☐ Male   ☒ Female

f. Residence

5612 Gables St
Street Address

San Diego   Cal   92139
City or Town    State    Zip Code

**2. Employer:** Self Employed

**3. Owner: (PRINT)** (If proposed Annuitant is to be Owner, state "Annuitant")

Annuitant
First Name    Middle Initial    Last Name

Soc. Sec. or Ident. No.      Age

Street Address

City or Town    State    Zip Code

**4. Mailing address for premium notices: (PRINT) (Check one)**
☒ Proposed Annuitant   ☐ Owner   ☐ Other
(Specify name and address below if not shown above)

Name

Street Address

City or Town    State    Zip Code

**5. Beneficiary and relationship to proposed Annuitant: (PRINT)**

Charles D. Mattorocchia
The right is reserved to change the beneficiary. Husband

**6. What advance payment has been made with this application?**
(If none, so state) (See agreement B below)

$ 1,500.00

**7. Is the annuity applied for intended to replace or change any life insurance or annuity now in force?** (If so, give Company and full details)

No

**8. Is annuity contract to be under a plan or arrangement intended to meet requirements of Internal Revenue Code?**

☒ Yes   ☐ No   (If "Yes, check type of plan or arrangement below)

a. ☐ Pension Trust    f. ☐ HR10-Self Employed Individuals Tax Retirement Act*
b. ☐ Profit Sharing Plan
c. ☐ Non Trusteed Plan*    g. ☒ Individual Retirement Annuity**
d. ☐ TSA-Public School*
e. ☐ TSA-Tax Exempt Organization under IRC Section 501(c)(3)*    h. ☐ Individual Retirement Annuity-Rollover**
   i. ☐ Other (Specify) .............

*Annuity contract to be subject to assignment restrictions for Federal Income Tax purposes.
**Annuity contract to include special endorsement applicable to Individual Retirement Annuity plans.

**9. Annuity applied for:**
☐ Flexible Premium Annuity
   a. Amount of Premium for Interval selected $...............
   b. Premium Payment Interval
     ☐ Ann.   ☐ S.A.   ☐ Quar.   ☐ Monthly
     ☐ Other (Specify other interval)........
   c. If TSA case, how many monthly payments will be made each year
     ☐ 12   ☐ 10   ☐ 9
☒ Single Premium Deferred Annuity
   Amount of Single Premium $ 1,500.00

**10a. Date of Issue desired** 3/31/82
   b. Provisional Date of Maturity desired is the contract anniversary nearest 29 birthday

**11. If Disability Benefit desired, check a. complete b. below and Part B of Form 128.**
Applicable only if Flexible Premium Annuity requested in 9. above.
☐ a. Disability Benefit is requested:
Part B of Form 128 is a part of this application and the word "insured" therein shall be construed to mean "proposed Annuitant."
b. State total amounts of insurance and annuities with disability benefits in force, pending or contemplated on the proposed Annuitant as follows:

(1) Life Insurance $........................
(2) Monthly Annuities $........................
(3) Monthly Disability Income $........................

**12. State any special requests:**

Prepayments Annuity 1500.00

---

A. The foregoing statements and answers are complete, true and correctly recorded to the best of my knowledge and belief, and with all Parts B of this application, if any, shall form the basis for and be part of any annuity contract issued upon this application.

B. The annuity contract shall take effect as of its Date of Issue, but only if the proposed Annuitant is living on that date and on the date the first premium is paid. If a Disability Benefit is included, the annuity contract shall take effect only upon delivery to and receipt by the Applicant of the contract and payment of the premium thereon and only if at the time of such delivery the

proposed Annuitant has not consulted, been examined or been treated by a physician or other practitioner since the completion of the latest Part B.

C. Ownership and control of any annuity contract issued upon this application shall be as determined by the provisions of the contract.

D. No agent is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, contract or receipt. Notice to or knowledge of any agent whenever given is not notice to or knowledge of the Company.

---

№ 127908

All statements and answers in this application are to the best of my knowledge and belief true and complete and I assent to this application.

Signature of proposed Annuitant if other than Applicant

x _Victoria Mattorocchia_
Applicant's Signature

Written at National City, Cal on 3/31 19 82 _____
City or Town    State    Witness — Agent must witness where required by law

Form 1140-0-78    Receipt must not be detached unless Question 6 indicates payment has been made    Printed in U.S.A.

The ANNUITANT, by virtue of this contract, is a member of the John Hancock Mutual Life Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of the Company. The annual meetings are held at the Company's Home Office on the second Monday of February in each year, at twelve o'clock noon.

Communications about this contract may be sent to the Company at John Hancock Place, Boston, Massachusetts 02117, or to any Agency of the Company.

Single Premium Annuity for Retirement Plans with optional additional premium payments — Monthly Annuity payable to Annuitant beginning on Date of Maturity for a guaranteed period of 10 years and thereafter for life

Nonparticipating

Schedules of benefits and premiums are shown on page 3

Form 81-67                                                                 Printed in U.S.A.

*3*

 Variable Life Ins

**JOHN HANCOCK MUTUAL LIFE INSURANCE CO.**
**GORDON BYGLAND**
District Manager
Suite 802, 3111 Camino Del Rio North
San Diego, CA 92108
(619) 280-6401



John Hancock Place
Boston, Massachusetts 02117

| | | | |
|---|---|---|---|
| INSURED | VICTORIA MATTAROCCHIA | $100,000 | INITIAL FACE AMOUNT |
| PLAN | FLEXIBLE PREMIUM ADJUSTABLE LIFE | JUNE 7, 2049 | MATURITY DATE |
| POLICY NUMBER | UL 00 138 659 | JUNE 7, 1986 | DATE OF ISSUE |

# Individual Life Insurance

The John Hancock Variable Life Insurance Company agrees, subject to the conditions and provisions of this policy, to pay at its Home Office in Boston, Massachusetts the Policy Value or the Death Benefit, and to provide the other Benefits, Rights and Privileges of the policy.

The Policy Value will be paid to the Owner on the Maturity Date, if the Insured is then living and if the policy is then in force; or

The Death Benefit will be paid to the Beneficiary on receipt at the Home Office of the Company in Boston, Massachusetts, of due proof of the occurrence of the Insured's death before the Maturity Date and while the policy is in force.

The Policy is issued in consideration of the application and the payment of the Minimum First Premium as shown on page 3.

Policy Specifications on page 3 and the conditions and provisions on this and the following pages are part of the policy.

**10 Day Right of Examination** — This policy may be returned by delivering or mailing it within 10 days after its receipt to the Company at Boston, Massachusetts, or to the agent or agency office through which it was delivered. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium paid on it will then be refunded.

Signed for the Company at Boston, Massachusetts.

*John J. Longmore*
President

*James J. Callahan*
Secretary

Flexible Premium Adjustable Life
Death Benefit payable at death before Maturity Date
Policy Value payable on Maturity Date if Insured is then living
Not eligible for dividends

Form 85-90

**Policy Provisions**

Section

1 Definitions
2 Policy Specifications
3 Table of Rates
4 Death Benefit
5 Face Amount
6 Premium Payments
7 Grace Period
8 Policy Value
9 Surrender
10 Loans
11 Reinstatement
12 Annual Report
13 Owner, Contingent Owner, Beneficiary
14 Interest on Proceeds
15 Claims of Creditors
16 Assignment
17 Incontestability
18 Misstatement of Age or Sex
19 Suicide
20 The Contract
21 Indexed Face Amount
22 Basis of Computations
23 Settlement Provisions

**Alphabetical Guide**

Section

12 Annual Report
16 Assignment
22 Basis of Computations
13 Beneficiary
15 Claims of Creditors
21 Consumer Price Index
20 Contract
4 Death Benefit
4 Death Benefit Options
1 Definitions
2, 8 Expense Charges
5 Face Amount
7 Grace Period
17 Incontestability
21 Indexed Face Amount
14 Interest on Proceeds
2, 10 Loan Interest Rate
10 Loans
18 Misstatement of Age or Sex

**Alphabetical Guide**

Section

8 Monthly Charge
13 Owner, Contingent Owner, Beneficiary
9 Partial Surrender
2, 6 Planned Premiums
2 Policy Specifications
8 Policy Value
6 Premium Payments
11 Reinstatement
23 Settlement Provisions
19 Suicide
9 Surrender
9 Surrender Charge
9 Surrender Value
3 Table of Rates

## 1. DEFINITIONS

"We", "us" and "our" refer only to the John Hancock Variable Life Insurance Company.

"You" and "your" refer only to the Owner of this policy.

"Payment" means, unless otherwise stated, payment at our Home Office in Boston, Massachusetts.

"Indebtedness" means loan indebtedness on the policy.

"Written notice" means, unless otherwise stated, a written notice filed at our Home Office in Boston, Massachusetts.

"In force" means that the insurance under the policy is being continued for the Death Benefit.

## 2. POLICY SPECIFICATIONS

OWNER, BENEFICIARY – AS DESIGNATED IN THE APPLICATION SUBJECT TO SECTION 13 OF THE POLICY

ISSUE AGE  32

| | | | | |
|---|---|---|---|---|
| INSURED | VICTORIA MATTAROCCHIA | $100,000 | INITIAL FACE AMOUNT |
| PLAN | FLEXIBLE PREMIUM ADJUSTABLE LIFE | JUNE 7, 2049 | MATURITY DATE |
| POLICY NUMBER | UL 00 138 659 | JUNE 7, 1986 | DATE OF ISSUE |

THIS POLICY IS IN A  STANDARD  PREMIUM CLASS

PREMIUMS
    MINIMUM FIRST PREMIUM                          $195.00
    AMOUNT OF EACH PLANNED PREMIUM                 $708.00
    PLANNED PREMIUM PAYABLE                         ANNUAL

EXPENSE CHARGES
    PREMIUM EXPENSE CHARGE          8.0%      OF EACH PREMIUM PAID
    ISSUE CHARGE                    $33.00    PER MONTH FOR FIRST 12 MONTHS

SURRENDER CHARGE

| DURING POLICY YEAR | CHARGE | DURING POLICY YEAR | CHARGE | DURING POLICY YEAR | CHARGE |
|---|---|---|---|---|---|
| 1–10 | $1,199.64 | 14 | $762.97 | 18 | $327.50 |
| 11 | $1,090.47 | 15 | $653.80 | 19 | $218.33 |
| 12 | $981.31 | 16 | $545.84 | 20 | $109.17 |
| 13 | $872.14 | 17 | $436.67 | 21 AND LATER | $0.00 |

OTHER
    MONTHLY CHARGE DATE –  7TH  DAY OF EACH CALENDER MONTH
    INITIAL DEATH BENEFIT OPTION –  OPTION 1
    MINIMUM FACE AMOUNT –  $100,000
    MINIMUM MONTHLY PREMIUM –  $65.00
    MINIMUM MONTHLY PREMIUM PERIOD –  04    YEARS
    LOAN INTEREST RATE –  SEE VARIABLE LOAN INTEREST RATE ENDORSEMENT

– POLICY ISSUED ON NONSMOKER BASIS –

NOTICE:  THE ACTUAL PREMIUMS PAID WILL AFFECT THE POLICY VALUE AND THE DURATION OF
         INSURANCE COVERAGE, AND WILL AFFECT THE DEATH BENEFIT IF THE POLICY VALUE AFFECTS
         THE DEATH BENEFIT. THE POLICY WILL CONTINUE IN FORCE TO THE MATURITY DATE ONLY IF
         ACTUAL PREMIUMS PAID PLUS ACTUAL INTEREST CREDITED LESS ANY EXPENSE CHARGES AND
         LESS ANY SURRENDER CHARGES AND LESS ANY PARTIAL SURRENDERS AND LESS ANY
         INDEBTEDNESS ARE SUFFICIENT TO PROVIDE FOR ALL MONTHLY CHARGES WHEN DUE.

3

C320414

## 3. TABLE OF RATES

POLICY NUMBER   UL 00 138 659                    INITIAL FACE AMOUNT      $100,000

DATE OF ISSUE    JUNE 7, 1986

### GUARANTEED MAXIMUM MONTHLY RATES PER $1000

| AGE | MONTHLY RATE | AGE | MONTHLY RATE | AGE | MONTHLY RATE |
|---|---|---|---|---|---|
| 32 | $0.19 | 53 | $0.91 | 74 | $5.86 |
| 33 | $0.19 | 54 | $1.00 | 75 | $6.33 |
| 34 | $0.20 | 55 | $1.09 | 76 | $6.85 |
| 35 | $0.21 | 56 | $1.19 | 77 | $7.44 |
| 36 | $0.22 | 57 | $1.30 | 78 | $8.11 |
| 37 | $0.23 | 58 | $1.43 | 79 | $8.85 |
| 38 | $0.25 | 59 | $1.56 | 80 | $9.66 |
| 39 | $0.27 | 60 | $1.71 | 81 | $10.54 |
| 40 | $0.29 | 61 | $1.87 | 82 | $11.46 |
| 41 | $0.32 | 62 | $2.05 | 83 | $12.43 |
| 42 | $0.35 | 63 | $2.24 | 84 | $13.45 |
| 43 | $0.38 | 64 | $2.45 | 85 | $14.54 |
| 44 | $0.41 | 65 | $2.69 | 86 | $15.69 |
| 45 | $0.45 | 66 | $2.94 | 87 | $16.92 |
| 46 | $0.49 | 67 | $3.23 | 88 | $18.24 |
| 47 | $0.53 | 68 | $3.54 | 89 | $19.71 |
| 48 | $0.58 | 69 | $3.88 | 90 | $21.35 |
| 49 | $0.64 | 70 | $4.25 | 91 | $23.23 |
| 50 | $0.70 | 71 | $4.63 | 92 | $25.43 |
| 51 | $0.76 | 72 | $5.02 | 93 | $28.06 |
| 52 | $0.83 | 73 | $5.43 | 94 | $31.23 |

On a policy anniversary, "Age" means the age of the insured at his or her birthday nearest that date. That "Age" will apply until the next anniversary. Monthly rates are based on the 1958 Commissioners Standard Ordinary Table.

4                                                                                    C320414

## 4. DEATH BENEFIT

The Death Benefit is as defined below. It is calculated as of the date of the Insured's death.

There are three Death Benefit Options:

- Option 1 – The Death Benefit is the greater of:

    (a) the Face Amount; and

    (b) the Policy Value plus the Minimum Amount at Risk.

- Option 2 – The Death Benefit is the greater of:

    (a) the Face Amount plus the Policy Value; and

    (b) the Policy Value plus the Minimum Amount at Risk.

- Option 3 – The Death Benefit is as defined under Option 1 except that the Face Amount varies in accordance with changes in the Consumer Price Index as provided in the "Indexed Face Amount" provision. (See Section 21.)

The Minimum Amount at Risk is the Policy Value multiplied by the Applicable Percentage from the table below.

| Age at policy anniversary nearest Insured's birthday | | Applicable Percentage decreasing uniformly for each full policy year | |
|---|---|---|---|
| More than | But not more than | From | To |
| (or equal to) 0 | 40 | 150% | 150% |
| 40 | 45 | 150 | 115 |
| 45 | 50 | 115 | 85 |
| 50 | 55 | 85 | 50 |
| 55 | 60 | 50 | 30 |
| 60 | 65 | 30 | 20 |
| 65 | 70 | 20 | 15 |
| 70 | 75 | 15 | 5 |
| 75 | 90 | 5 | 5 |
| 90 | 95 | 5 | 0 |

The Death Benefit Option is the initial Death Benefit Option as shown on page 3 until changed. With our approval you may elect to change the Option by written notice after the first policy year. Changes from Option 1 to Option 2 or 3, or from Option 2 to Option 3 will require evidence of insurability satisfactory to us as part of our approval. No change to Option 2 may be made unless the resulting Face Amount is at least the Minimum Face Amount as shown on page 3. When a change from Option 2 becomes effective, and if then required by our rules, a Partial Surrender and/or a reduction in future Planned Premiums will automatically be effected to comply with those rules. Automatic changes from Option 3 to Option 1 may also occur in accordance with the "Indexed Face Amount" provision. Any change will be effective on the next Monthly Charge Date after our approval.

## 5. FACE AMOUNT

The Face Amount is equal to the initial Face Amount as shown on page 3 until changed. A change may be made: (i) on request; (ii) due to a change in Death Benefit Option; (iii) in accordance with Death Benefit Option 3; or (iv) due to a Partial Surrender.

- Requested Changes – Changes in the Face Amount may be requested by written notice at any time after the first policy year. We reserve the right to limit the number and maximum and minimum amounts of requested changes. A request to change the Face Amount will be subject to our approval. We will require evidence of insurability satisfactory to us as part of our approval. A minimum premium payment may also be required. Any increase will be subject to the new "Table of Rates" page (page 4), and will be effective on the date shown on that page. The Additional Issue Charge shown on that page will be deducted from the Policy Value on each of the next 12 Monthly Charge Dates beginning on that date. No decrease in Face Amount may be made unless the resulting Face Amount is at least the Minimum Face Amount as shown on page 3. When a requested decrease becomes effective, and if then required by our rules, a Partial Surrender and/or a change in future Planned Premiums will automatically be effected to comply with those rules. Any decrease will be effective on the next Monthly Charge Date after our approval.

5

C543643

- **Changes in Death Benefit Option** – At the time a new Option takes effect after a change, the Death Benefit under the new Option will be the same as it was under the old Option. A change to Option 2 will decrease the Face Amount by the Policy Value. A change from Option 2 will increase the Face Amount by the Policy Value.
- **Changes Under Death Benefit Option 3** – The Face Amount varies annually in accordance with changes in the Consumer Price Index as provided in the "Indexed Face Amount" provision.
- **Changes Due to a Partial Surrender** – The Face Amount may vary as provided in the "Surrender" provision.

## 6. PREMIUM PAYMENTS

Payment of premiums shall be made only to us at our Home Office.

Planned Premiums as of the Date of Issue are shown on page 3. They are scheduled to be paid on the first day of their payment interval. You may request a change in the amount and frequency of future Planned Premiums, subject to any limitations then in effect. We may make changes in the amount of future Planned Premiums in accordance with the "Death Benefit", "Face Amount" and "Surrender" provisions of the policy.

Subject to our minimum and maximum limits, additional premiums may be paid while the policy is in force before the Maturity Date.

We may refuse to credit all or part of a premium payment if the total of premiums paid then exceeds the total of the Minimum First Premium and all Planned Premiums scheduled to be paid from the Date of Issue. Any uncredited excess will be refunded or applied as otherwise agreed.

## 7. GRACE PERIOD

If on a Monthly Charge Date, prior to deduction of the Monthly Charge, the required Monthly Charge exceeds the Policy Value less: (i) any Surrender Charge that would then be due on surrender; and (ii) any indebtedness, this policy will remain in force for a grace period of 60 days from the Monthly Charge Date. We will send notice of the minimum premium that we require to keep the policy in force beyond the end of the grace period. If such premium is not received by the end of the grace period, the policy will terminate without value.

However, during the Minimum Monthly Premium Period as shown on page 3, this policy will not terminate in accordance with this "Grace Period" provision: (a) if, on the Monthly Charge Date that would begin the Grace Period, the sum of: (i) premiums paid; less (ii) Partial Surrenders; less (iii) indebtedness equals or exceeds: (i) the Minimum Monthly Premium shown on page 3; times (ii) the number of complete policy months since the Date of Issue plus the current policy month; and (b) if there have been no requested increases in Face Amount, Partial Surrenders or the addition of a rider after the Date of Issue of this policy.

If the Insured dies during the grace period, we will deduct from the proceeds any unpaid Monthly Charges.

## 8. POLICY VALUE

On the Date of Issue, or if later on receipt of the first payment at our Home Office, the Policy Value will be equal to the premium credited less those Expense Charges shown on page 3 and less any Monthly Charges then due. The first Monthly Charge is due on the Date of Issue. The Policy Value is then determined daily by accumulating at interest the Policy Value for the prior day increased by premiums credited and decreased by expense charges, Partial Surrenders and, on a Monthly Charge Date, the Monthly Charge.

### Interest

We will determine the rate or rates of interest to be credited to the Policy Value. In no event will the credited interest rate be less than an effective annual rate of 4½%.

We will determine a separate rate of interest to be credited to: (i) Amounts of Policy Value up to and including indebtedness; and (ii) Amounts of Policy Value in excess of indebtedness.

6

C543643

Expense Charges

- We will deduct from each premium paid, including the first premium, the Premium Expense Charge shown on page 3.
- We will deduct from the first premium, and from the Policy Value on each of the next 11 Monthly Charge Dates, the Issue Charge shown on page 3. We will deduct an Additional Issue Charge from the Policy Value on the effective date of any requested increase in Face Amount, and from the Policy Value on each of the next 11 Monthly Charge Dates. This charge will be shown on the new page 4. Such Additional Issue Charge will be determined in accordance with our rules in effect on the date of the increase.

Monthly Charge

The Monthly Charge on a Monthly Charge Date is an amount determined by us and is for the policy month beginning on such date. The Monthly Charge is that month's charge: (i) for the Amount at Risk under the policy on the Monthly Charge Date; and (ii) for any applicable riders which are part of the policy.

- For Death Benefit Option 1, the Amount at Risk is the greater of:

  (a)  the Face Amount divided by 1.0036748 less the Policy Value; and
  (b)  the Minimum Amount at Risk.

- For Death Benefit Option 2, the Amount at Risk is the greater of:

  (a)  the Face Amount divided by 1.0036748; and
  (b)  the Minimum Amount at Risk.

- For Death Benefit Option 3, the Amount at Risk is the greater of:

  (a)  the Face Amount (as modified by changes under the "Indexed Face Amount" provision) divided by 1.0036748, less the Policy Value; and
  (b)  the Minimum Amount at Risk.

Maximum Monthly Rates are shown in the applicable Table of Rates on page 4. The Applied Rates are the actual rates used in calculating the Monthly Charge. We will declare the Applied Rates to be used for this policy. They will not exceed the applicable Maximum Monthly Rates. The Applied Rates will be based on our expectations of future experience.

For purposes of determining which rates will apply and how they will be applied in determining the Monthly Charge:

(a)  If there has been a requested increase in Face Amount, we will first apply the rates for the last requested increase in Face Amount to amounts associated with that last increase, up to the Amount at Risk. If there is any excess Amount at Risk, we will apply rates in order for each prior increase to amounts associated with that increase. If there is still any Amount at Risk, we will apply rates for the Initial Face Amount to the amount associated with the Initial Face Amount; and

(b)  any annual percentage change under the "Indexed Face Amount" provision will be applied separately to each portion of the Face Amount associated with the Initial Face Amount and with each requested increase in Face Amount; and

(c)  a decrease in Face Amount will first be applied to amounts associated with the most recent requested increase in Face Amount, then in order to amounts associated with each prior requested increase and then to amounts associated with the Initial Face Amount.

7                                                                          C752839

## 9. SURRENDER

We will pay the Surrender Value of the policy on receipt of written notice and the policy before the insured's death and before the Maturity Date. On such receipt the policy will terminate without further value.

The Surrender Value will be equal to the Policy Value less any indebtedness and less any Surrender Charge. The Surrender Charge is shown on page 3.

Within 30 days after a policy anniversary the Surrender Value will not be less than the Surrender Value on that date adjusted by any Partial Surrenders or Monthly Charges or changes in indebtedness since that date.

After the first policy year you may request a surrender of less than the Surrender Value. The total of the requested amount and of any charges made is called a Partial Surrender. A charge of $25 will be made. We will pay the requested amount on receipt of written notice and the policy before the insured's death and before the Maturity Date. On such receipt the amount of the Partial Surrender will be deducted from the Policy Value and, under Death Benefit Options 1 and 3, from the Face Amount. The Partial Surrender cannot exceed an amount equal to the Surrender Value less $500. No Partial Surrender can be made unless the resulting Face Amount is at least equal to the Minimum Face Amount shown on page 3. We reserve the right to limit the number of Partial Surrenders. If required by our rules in effect when the Partial Surrender becomes payable, a reduction in future Planned Premiums will automatically be effected to comply with those rules.

We may defer the payment of any surrender but not for more than 6 months, or any shorter period as provided by law, from the date we receive written notice and the policy. Interest on the amount of the payment at the guaranteed rate of 4½ % will be credited for the period that the payment is deferred.

## 10. LOANS

You may borrow money from us while the policy is in force after the first policy year on receipt at our Home Office of a completed form satisfactory to us assigning the policy as the only security for the loan. We may defer loans, but not for more than 6 months or any shorter period as provided by law. We will not defer loans to pay premiums on our policies.

The amount of loan available will be the Surrender Value on the date of the loan less interest on all indebtedness from the date of the loan to the next policy anniversary.

Loan interest at the Loan Interest Rate referred to on page 3 will accrue daily beginning on the date of the loan. Loan interest will be added to the indebtedness daily and will bear interest at the same rate from the date added.

Indebtedness may be repaid in full or in part at any time while the policy is in force before the insured's death.

We will deduct any indebtedness from the amount otherwise payable when the policy proceeds become payable.

## 11. REINSTATEMENT

If termination occurs under the "Grace Period" provision, this policy may be reinstated within 5 years after the date of termination.

The Reinstatement requirements are:

(1) A written application for Reinstatement; and
(2) Production of evidence of insurability satisfactory to us; and
(3) Payment with interest at the Loan Interest Rate or such lesser rate as provided by law of the balance of unpaid Monthly Charges for the period before the policy terminated, together with applicable Expense Charges as if this payment were a premium payment; and
(4) Payment of a premium at least equal to the greater of:
    (a) twice the current Monthly Charge now due for the reinstated policy together with applicable Expense Charges; and
    (b) $500; and
(5) Payment or reinstatement of any indebtedness outstanding when the policy terminated.

On the date of Reinstatement, the Policy Value will be the amount provided by the premium paid plus an amount equal to any indebtedness outstanding when the policy terminated.

8

C752839

## 12. ANNUAL REPORT

We will send you a report at least once in each year which shows:
- The Death Benefit, Face Amount and Policy Value as of the date of the report;
- Premiums received and charges made since the last report;
- Partial Surrenders since the last report;
- Loan information.

## 13. OWNER, CONTINGENT OWNER, BENEFICIARY

The Owner, the Contingent Owner (if any) and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision. You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice; but if a person other than the Insured applied for this policy, only your appointed guardian may exercise your rights if you have not reached full age.

(Applicable only if the Issue Age shown on page 3 is under 15) – if you die or become legally disabled, the Contingent Owner will become the Owner. If there is no surviving Contingent Owner, the Insured will become the Owner.

If the Insured dies and there is no surviving Beneficiary, you will be the Beneficiary; but if you were the Insured, your estate will be the Beneficiary.

While the Insured is alive, you may change the Owner, Contingent Owner and Beneficiary by written notice. A change will take effect when the notice is signed if we acknowledge receipt on the notice. The change will take effect whether or not you or the Insured is then alive. A change shall be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we acknowledged receipt.

## 14. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment. The rate will be the same as declared for Option 1, Settlement Provisions.

## 15. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn without our agreement before becoming payable.

## 16. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Insured and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing; nor will we be on notice until a duplicate of the original assignment has been received at our Home Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 17. INCONTESTABILITY

This policy, except any provision for a disability benefit, reinstatement or policy change requiring evidence of insurability, shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue, except when premium payments are insufficient to keep the policy in force.

A reinstatement and any policy change requiring evidence of insurability shall be incontestable after it has been in force during the lifetime of the Insured for two years from its effective date, except when premium payments are insufficient to keep the policy in force.

## 18. MISSTATEMENT OF AGE OR SEX

If the age or the sex of the Insured has been misstated, we will determine the adjustment to be made to reflect the benefits that would have been provided at the true age and sex.

C939141A

### 19. SUICIDE

If the Insured commits suicide while sane or insane within 2 years from the Date of Issue, we will pay in place of all other benefits an amount equal to the premiums paid less any indebtedness, and less the amount of any Partial Surrenders.

If the Insured commits suicide while sane or insane after 2 years from the Date of Issue but within 2 years of any requested increase in Face Amount, we will: (1) reduce the Face Amount by requested increases within 2 years of the date of death; (2) calculate the Death Benefit on the reduced Face Amount; and (3) pay in place of all other benefits such Death Benefit, plus any Monthly Charges deducted for the cancelled increases, less indebtedness.

### 20. THE CONTRACT

The entire contract between the applicant and us consists of the policy and the written application. A copy of the application is attached at issue. Any application required as part of a written notice for a policy change will be attached to and be a part of the policy. All statements made in any application shall, in the absence of fraud, be deemed representations and not warranties. We will use no statement made by or on behalf of the Insured to defend a claim under the policy unless it is in a written application.

Policy years, policy months and policy anniversaries are measured from the Date of Issue.

Changes in this policy may be made by agreement between you and us.

Only the President, a Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

### 21. INDEXED FACE AMOUNT
### (Applicable only if Death Benefit Option 3 elected)

Calculation

As of each policy anniversary while Death Benefit Option 3 is in effect, the Face Amount will be calculated to reflect the applicable change in the Consumer Price Index. The resulting Face Amount on a policy anniversary will be equal to the greater of:

(a) the Face Amount on that anniversary (before indexing); or

(b) the Initial Face Amount times the ratio of the Consumer Price Index for the Index Month preceeding that anniversary to the Consumer Price Index for the Index Month preceeding the Date of Issue. The Index Month is shown on page 4.

Annual Reports

We will furnish an annual report indicating each new Face Amount.

Monthly Charge

Beginning on each policy anniversary, the Monthly Charge will reflect the new Face Amount.

Right to Refuse

You may elect to refuse an adjustment in the Face Amount by written notice before the Insured's death and within 60 days of each policy anniversary. Refusal will cause an automatic change to Death Benefit Option 1.

Change to Death Benefit Option 1

A change from Death Benefit Option 3 to Death Benefit Option 1 will automatically be made:

(1) As of the policy anniversary for which you elect to refuse an adjustment;

(2) As of the date a requested decrease in Face Amount or a Partial Surrender is effective. If such date is a policy anniversary, no adjustment in the Face Amount will be made as of such anniversary for any change in the Consumer Price Index.

C939141A

For purposes of the "Calculation" section of this provision, on any policy anniversary on or next following the effective date of the latest: (a) requested increase in Face Amount; or (b) change to Death Benefit Option 3:

(i) the "Initial Face Amount" will be redefined as the total Face Amount on that anniversary (before indexing); and

(ii) the "Consumer Price Index for the Index Month preceeding the Date of Issue" will be redefined as the Consumer Price Index for the Index Month preceeding the next prior policy anniversary.

These definitions will remain in effect for future policy anniversaries unless a later requested increase in Face Amount or a later change to Death Benefit Option 3 becomes effective. In that case similar redefinition will take place.

### Consumer Price Index

The Consumer Price Index referred to in this policy is the Index published by the United States Department of Labor for all Urban Consumers. If any change in the composition, base or method of computation is made which in our opinion makes the continued use of the Index inappropriate, or if the publication of the Index is discontinued or delayed, we reserve the right to make adjustments or to select a substitute that we deem appropriate.

### 22. BASIS OF COMPUTATIONS

Guaranteed values for this policy are not less than minimum values required by law. Such values are based on the Mortality Table shown on page 4 and an interest rate of 4½%.

### 23. SETTLEMENT PROVISIONS

#### OPTIONAL METHODS OF SETTLEMENT

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit, as a Partial Surrender or as the Surrender Value, if any, may be left with us, under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the choice of any one of the options below. We shall annually declare the rate of interest or amount of payment for each option.

**Option 1** – Interest income at the declared rate but not less than 3½% a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A** – Income of a Specified Amount, with payments each year of at least 1/12th of the proceeds, until they are paid in full. We will credit interest on unpaid balances at the declared rate but not less than 3½% a year.

**Option 2B** – Income for a Fixed Period, with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3** – Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the Payee dies within that period, we will pay the present value of those remaining payments. We will use interest at the same rate used to determine the payments for this value.

**Option 4** – Life Income without Refund at the death of the Payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5** – Life Income with Cash Refund at the death of the Payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may choose an option by written notice during the lifetime of the Insured. The choice must be made before the proceeds become payable. If you have made no effective choice, the Payee may make one by written notice within: (a) 6 months after the Insured's death; or (b) 2 months after the date on which the proceeds, if any, are payable in any case except death.

No choice of an option may provide for income payments of less than $50.00. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The Payee under an option shall be the Insured or the Beneficiary.

No option may be chosen without our consent if the proceeds are payable: (1) in any case, except death, before the policy has been in force on the same plan for at least 5 years; or (2) in any case to an executor, administrator, trustee, corporation, partnership, association or assignee.

The Payee may, by written notice, name and change a Contingent Payee to receive any final amount that would otherwise be payable to the Payee's estate.

11

C11H1230

**Table for Options 2B, 3, 4 and 5**
(Monthly payments for each $1000 of proceeds applied)

| OPTION 2B Income for a Fixed Period | | Age of Payee on Birthday Nearest Date of First Payment | | OPTION 3 Life Income with Guaranteed Period | | OPTION 4 Life Income without Refund | OPTION 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|---|
| Period of Years | Payment | Male | Female | 10 Years | 20 Years | | |
| 1 | 84.65 | 35 | 40 | 3.82 | 3.79 | 3.83 | 3.76 |
| 2 | 43.06 | 36 | 41 | 3.86 | 3.82 | 3.87 | 3.80 |
| 3 | 29.19 | 37 | 42 | 3.91 | 3.86 | 3.92 | 3.84 |
| 4 | 22.27 | 38 | 43 | 3.95 | 3.90 | 3.96 | 3.87 |
| 5 | 18.12 | 39 | 44 | 4.00 | 3.94 | 4.01 | 3.91 |
| 6 | 15.35 | 40 | 45 | 4.05 | 3.98 | 4.06 | 3.95 |
| 7 | 13.38 | 41 | 46 | 4.10 | 4.02 | 4.12 | 4.00 |
| 8 | 11.90 | 42 | 47 | 4.15 | 4.07 | 4.18 | 4.04 |
| 9 | 10.75 | 43 | 48 | 4.21 | 4.11 | 4.24 | 4.08 |
| 10 | 9.83 | 44 | 49 | 4.27 | 4.16 | 4.30 | 4.13 |
| 11 | 9.09 | 45 | 50 | 4.33 | 4.21 | 4.36 | 4.18 |
| 12 | 8.46 | 46 | 51 | 4.39 | 4.26 | 4.43 | 4.23 |
| 13 | 7.94 | 47 | 52 | 4.46 | 4.31 | 4.51 | 4.29 |
| 14 | 7.49 | 48 | 53 | 4.53 | 4.36 | 4.58 | 4.34 |
| 15 | 7.10 | 49 | 54 | 4.60 | 4.42 | 4.66 | 4.40 |
| 16 | 6.76 | 50 | 55 | 4.68 | 4.47 | 4.74 | 4.46 |
| 17 | 6.47 | 51 | 56 | 4.75 | 4.53 | 4.83 | 4.52 |
| 18 | 6.20 | 52 | 57 | 4.83 | 4.58 | 4.92 | 4.59 |
| 19 | 5.97 | 53 | 58 | 4.92 | 4.64 | 5.02 | 4.66 |
| 20 | 5.75 | 54 | 59 | 5.01 | 4.70 | 5.12 | 4.73 |
| 21 | 5.56 | 55 | 60 | 5.10 | 4.76 | 5.22 | 4.81 |
| 22 | 5.39 | 56 | 61 | 5.19 | 4.82 | 5.33 | 4.89 |
| 23 | 5.24 | 57 | 62 | 5.29 | 4.88 | 5.45 | 4.97 |
| 24 | 5.09 | 58 | 63 | 5.40 | 4.94 | 5.57 | 5.06 |
| 25 | 4.96 | 59 | 64 | 5.51 | 5.00 | 5.70 | 5.15 |
| 26 | 4.84 | 60 | 65 | 5.52 | 5.07 | 5.84 | 5.25 |
| 27 | 4.73 | 61 | 66 | 5.74 | 5.13 | 5.98 | 5.35 |
| 28 | 4.63 | 62 | 67 | 5.87 | 5.19 | 6.14 | 5.46 |
| 29 | 4.53 | 63 | 68 | 6.00 | 5.24 | 6.31 | 5.58 |
| 30 | 4.45 | 64 | 69 | 6.14 | 5.30 | 6.49 | 5.69 |
| | | 65 | 70 | 6.28 | 5.35 | 6.68 | 5.82 |
| Annual, semi-annual or | | 66 | 71 | 6.43 | 5.41 | 6.88 | 5.95 |
| quarterly payments | | 67 | 72 | 6.59 | 5.46 | 7.10 | 6.09 |
| under Option 2B are | | 68 | 73 | 6.75 | 5.50 | 7.34 | 6.24 |
| 11.813, 5.957 and 2.991 | | 69 | 74 | 6.91 | 5.54 | 7.59 | 6.41 |
| respectively times the | | 70 | 75 | 7.08 | 5.58 | 7.86 | 6.57 |
| monthly payments. | | 71 | 76 | 7.26 | 5.62 | 8.16 | 6.74 |
| | | 72 | 77 | 7.44 | 5.65 | 8.47 | 6.94 |
| | | 73 | 78 | 7.62 | 5.67 | 8.81 | 7.13 |
| | | 74 | 79 | 7.80 | 5.69 | 9.18 | 7.34 |
| | | 75 | 80 | 7.98 | 5.71 | 9.58 | 7.58 |
| | | 76 | 81 | 8.17 | 5.72 | 10.01 | 7.81 |
| | | 77 | 82 | 8.35 | 5.73 | 10.48 | 8.06 |
| | | 78 | 83 | 8.52 | 5.74 | 10.98 | 8.36 |
| | | 79 | 84 | 8.69 | 5.75 | 11.53 | 8.64 |
| | | 80 | 85 & over | 8.85 | 5.75 | 12.13 | 8.94 |
| | | 81 | | 9.01 | 5.75 | 12.77 | 9.32 |
| | | 82 | | 9.15 | 5.75 | 13.48 | 9.66 |
| | | 83 | | 9.28 | 5.75 | 14.25 | 10.04 |
| | | 84 | | 9.39 | 5.75 | 15.09 | 10.53 |
| | | 85 & over | | 9.49 | 5.75 | 16.03 | 10.96 |

Options 3, 4 and 5 are available only at the ages as shown.



*John Hancock* Variable Life Insurance Company

Boston, Massachusetts 02117

**COPY ON POLICY**

**AMENDMENT TO APPLICATION**

Policy No. JL...............     Insured or
Proposed Insured ....... VICTORIA MATTAROCCHIA ...........................

It is requested that the application with respect to the above-numbered policy be amended as follows:

QUESTION 2A OF PART A TO READ: "FLEXIBLE PREMIUM ADJUSTABLE LIFE STANDARD."

Dated ............ JULY ........... 198..      X *Victoria Mattarocchia*

Form 174R (1)VL          Ed. 6-80 Printed in U. S. A.

No. 8371857

**Application to the John Hancock Variable Life Insurance Company — Part A — Statements to Company's Agent** — Page 1

1. Name of proposed insured: (PRINT)   MATTARO CCHIA   VICTOR, J
2a. Plan of Insurance:   PRE-FERRED
**Flexible Premium Adjustable Life**

b. Sex: ☐ M ☐ F
c. Date of Birth: 10 25 59
d. Place of Birth: New York, CA

b. Initial Face Amount: $ 100,000.00

**Death Benefit Options:**
☐ Option 1 - Face Amount
☐ Option 2 - Face Amount plus Policy Value
☐ Option 3 - Face Amount adjusted by Consumer Price Index

**Additional Benefit Provisions — Requested on proposed Insured:**
☐ a. Disability - Waiver of Monthly Charges

☐ c. Ins., of Ins. – Increase Limit $ _____
☐ d. Other _____

9. REPROSED INSURED — GIVE HEIGHT and WEIGHT

| Relationship to Proposed Insured | Date of Birth | Height | Weight | Present Total Life Insurance | Check only if applying for Manual Limit |
|---|---|---|---|---|---|
| First Name, Middle Initial, Last Name | | | 5'4" | 140# | $ 125,000 | |

11. Enter — Full name, age and relationship to proposed insured: (PRINT) If proposed Insured is the Owner, state "Insured."
    INSURED

12. Beneficiary as to proceeds payable in event of insured's death: (PRINT)   CHARLES D MATTAROCCHIA   (HUSBAND)

Owner's address for communications: (PRINT)
_____

Social Security or Tax Identification: _____

Contingent Owner — (Issue age 14 and under) (PRINT)

13a. Present occupation of proposed Insured:   STUDENT
b. Exact duties:

14a. Present occupation of proposed Insured's Spouse: (if proposed for Insurance in Question 9)
b. Exact duties:

**Planned premium payment interval:**
☐ Annual   ☐ Quarterly
☐ Semi-Annual   ☐ Monthly Preauthomatic
☐ Other _____

Planned Premium for Interval $ _____

What advance payment is made with this Part A?
This payment must be at least equal to the Minimum First Premium required by our published rules. $ _____

---

**Part A — Statements to Company's Agent (Continued)**   Page:

15a. Has proposed Insured smoked any cigarettes within the last twelve months?   ☐ Yes ☐ No
b. If no, state average number of packs per day.

16. Has "any person" done in past 3 years or does "any person" intend to do any:
a. flying except as a passenger on regularly scheduled airlines?   ☐ Yes ☐ No
b. skin or scuba diving, parachuting, motorcycle racing, or other hazardous sports?   ☐ Yes ☐ No
c. flying as a passenger over 150 hours a year?   ☐ Yes ☐ No

17. Has "any person" in the past 3 years:
a. been convicted of the violation of any criminal law, or are any criminal charges now pending against "any person"?   ☐ Yes ☐ No
b. been convicted of two or more moving violations or had a driving license suspended or revoked?   ☐ Yes ☐ No

18. Does "any person" intend to reside or travel outside the U.S. or Canada?   ☐ Yes ☐ No

19. Has an application for life or health insurance on "any person" ever been declined, postponed or rated?   ☐ Yes ☐ No

20. Is any other insurance application pending or contemplated on the life of "any person"?   ☐ Yes ☐ No

21. Is the insurance applied for intended to replace or change any life insurance or annuity now or in force on "any person"?   ☐ Yes ☐ No

22. Give information indicated as to all insurance on proposed insured now in force.

| Company | How It. | Year Issued | Life Insurance | Accidental Death |
|---|---|---|---|---|

23. Details of Answers to Questions 5, and 17–21.

24. State any special requests:

26. Has "any person" consulted a physician for or had treatment for heart disease or stroke within the past two years?   ☐ Yes ☐ No

26. Has "any person" consulted a physician for or had treatment for cancer within the past two years?   ☐ Yes ☐ No

27. Has "any person" been hospitalized in the past six months other than for normal pregnancy, or been advised by a physician that he or she needs hospitalization for any reason within the next 60 days?   ☐ Yes ☐ No

**Part A — Statements to Company's Agent (Continued)**

Page 3

**Agreement**

A. The foregoing statements and answers on pages 1 and 2 of this Part A are to the best of my knowledge and belief, complete, true and correctly recorded. They are representations and not warranties. With all Parts B of this application, they shall form the basis for and be a part of any contract of insurance.

B. Coverage shall take effect as provided in and subject to the terms and conditions of Conditional Temporary Insurance Agreement Form 156-UL-TIA 85 bearing the same date and number as this Part A, if: (1) payment of at least the Minimum First Premium, according to our requirements, is made with this Part A; and (2) the amount applied for in this and all other applications now pending on the life of each person proposed for insurance in this Company and the John Hancock Mutual Life Insurance Company does not exceed $1,000,000 life insurance; and (3) Questions 25-27 have been answered "No." If coverage does not so take effect, it shall take effect as of the Date of issue of the policy but: (1) only on delivery to and receipt by the Applicant of the the policy and payment of at least the Minimum First Premium, according to our requirements, thereon; and (2) only if at the time of such delivery and payment each person proposed for insurance in Parts A and B of this application is living and has not consulted, been examined, or treated by a physician or practitioner since the latest Part B pertaining to such person was completed.

C. No agent or medical examiner is authorized to make or discharge contracts or waive or change any of the conditions or provisions of any application, policy or receipt, or to accept risks or pass upon insurability. Notice to or knowledge of any agent or medical examiner, whenever given, is not notice to or knowledge of the Company.

All statements and answers in this application are to the best of my knowledge and belief, true and complete. They are representations and not warranties. I assent to this application.

Signature of proposed Insured, if other than the Applicant ......................................................
(Not required if under age 15)

Applicant's Signature *Vittoria Mittarocchia*

Dated at ........ *San Diego* ........... *Ca.* on ...... *5-7* ..... 19 *86*

NON-MEDICAL APPLICATION ONLY — Part B — Statements to Company's Agent

Give full details in space below for every "Yes" answer to questions 1-3 as to each person (including proposed insured) proposed for insurance, who is referred to below as "any person."

| | | YES | NO |
|---|---|:---:|:---:|
| 1. Has "any person" | a. Ever been treated for or had any known indication of heart or blood disease, chest pain, high blood pressure, stroke, diabetes, tumor, cancer, paralysis, convulsions, kidney disease, gastro-intestinal disease or respiratory disease? | ☐ | ☐ |
| | b. Within the last 5 years, consulted a physician, been examined or treated at a hospital or other medical facility? | ☐ | ☐ |
| 2. Is "any person" now being treated by a physician or other practitioner, or taking any prescription drug? | | ☐ | ☐ |
| 3. Has "any person" | a. Within the last 5 years used barbiturates, amphetamines, hallucinatory drugs or narcotics? | ☐ | ☐ |
| | b. Within the last 5 years received counseling or treatment regarding use of alcohol or drugs? | ☐ | ☐ |

4. Name and address of proposed Insured's personal physician (if none, so state)

Name .... *Dr. Tom Zaluscher*

Address ... *460   4th   Av. #303   Chula Vista   Ca* ....... Last Date Seen ....

**DETAILS of Questions 1-3** should be given with respect to "any person" to whom a "Yes" answer applies.

| Ques. Number | Name of Person (PRINT) | Details or Condition — Give Date, Duration, and Severity | Name and Address of each Physician, Hospital, etc. (PRINT) |
|---|---|---|---|
| | | SEE ATTACHED | |

The foregoing statements and answers on this Part B are to the best of my knowledge and belief, complete, true and correctly recorded. They are representations and not warranties.

Dated at ... *San Diego* .... on ... *5-7* ... 19 *86*

Signature of proposed Insured, if age 15 or over, or Applicant *Vittoria Mittarocchia*
if proposed Insured is under age 15

Form 156-UL-85

**Application to the John Hancock Variable Life Insurance Company — Part B — Statements to Company's Medical Examiner**

The questions and answers in 1-10 and Details of "Yes" answers apply to the following person proposed for Insurance

| | |
|---|---|
| 1. a. Person proposed for Insurance: (PRINT)<br>First Name **Victoria**  Middle Initial  Last Name **Mastorocchia**<br>b. Date of Birth  Month **12**  Day **25**  Year **54** | DETAILS of "Yes" answers. (IDENTIFY QUESTION NUMBER, CIRCLE APPLICABLE ITEMS): Include diagnosis, dates, duration and names and addresses of all attending physicians and medical facilities. |

**2. Ever been treated for or had any known indication of:**

| | Yes | No |
|---|---|---|
| a. Disorder of eyes, ears, nose, or throat? | ☐ | ☑ |
| b. Dizziness, fainting, convulsions, headache; speech defect, paralysis or stroke; mental or nervous disorder? | ☐ | ☑ |
| c. Shortness of breath, persistent hoarseness or cough, blood spitting; bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | ☐ | ☑ |
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☑ |
| e. Jaundice, intestinal bleeding; ulcer, hernia, appendicitis, colitis, diverticulitis, hemorrhoids, recurrent indigestion, or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☑ |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate, reproductive organs or breasts? | ☐ | ☑ |
| g. Diabetes; thyroid or other endocrine disorders? | ☐ | ☑ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine, back, or joints? | ☐ | ☑ |
| i. Deformity, lameness or amputation? | ☐ | ☑ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☑ |
| k. Allergies; anemia or other disorder of the blood? | ☐ | ☑ |
| l. Alcoholism? | ☐ | ☑ |

| | Yes | No |
|---|---|---|
| 3. Ever used or dealt in barbiturates, narcotics or other drugs, excitants or hallucinogens except as medication prescribed by a physician? | ☐ | ☑ |
| 4. Now under treatment or taking any prescription drug? **Xanax — see Item 2b** | ☑ | ☐ |
| 5. Any change in weight in the past year? Gain ___ lbs.  Loss ___ lbs. | ☐ | ☑ |

**6. Other than above, within the past 5 years:**

| | Yes | No |
|---|---|---|
| a. Had any mental or physical disorder not listed above? | ☐ | ☑ |
| b. Had a (checkup) consultation, illness, injury, surgery? | ☑ | ☐ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☐ | ☑ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☐ | ☑ |
| e. Been advised to have any diagnostic test, hospitalization, or surgery which was not completed? | ☐ | ☑ |

**7. Ever:**

| | Yes | No |
|---|---|---|
| a. Had military service deferment, rejection or discharge because of a physical or mental condition? | ☐ | ☑ |
| b. Requested or received a pension or income benefits because of an injury, sickness or disability? | ☐ | ☑ |

(handwritten details in right column):
2b. Nausea, dizziness & stress and headaches of unknown origin, some by rel. Most onc. precip. at work times. Dr. Tuchscher MD. Chula Vista Med Ctr. Chula Vista, CA

2d. 1-80 physical No Sx Pregnancy Pap, pelvic, breast, blood up. — W.N.L. Dr. Tuchscher MD

8 Father age 65 Dr High BP controlled c meds & diet

10 Sister age 23 died due to complications of severe mental retardation

| | Yes | No |
|---|---|---|
| To the best of your knowledge are you now pregnant?<br>Expected date of confinement | ☐ | ☑ |

9. a. Name and address of your personal physician: (If none, so state)<br>Name **Dr. ___ Tuchscher MD**<br>Address **Chula Vista Med Ctr. Chula Vista CA**

b. In past 5 years have you consulted your personal physician for any matter not recorded in answers to questions 2-6?  ☐ Yes  ☑ No<br>If "Yes", furnish reason, details and date in "Details" space above.

10. Any family history of tuberculosis, diabetes, cancer, high blood pressure, heart or kidney disease, or mental illness?  ☑ Yes  ☐ No

| | Age If Living | Cause of Death | Age at Death |
|---|---|---|---|
| Father | 65 | | |
| Mother | 60 | | |
| Brothers and Sisters<br>No. Living — 2<br>No. Dead — 1 | 32 | Complications Daughter of Severe Mental Retarded | 23 |

The foregoing statements and answers are to the best of my knowledge and belief, complete, true, and correctly recorded and are representative and not warranties.

Dated at **San Diego**  **CA**  **June 19. 80**<br>     City or Town   State

Witness **Shirley O Simmons**<br>Medical Examiner **Shirley Simmons**

Signature of person proposed for insurance, if age 15 or over, or Applicant, if person proposed is under age 15 — **Victoria Mastorocchia**

Form 137-VL-79 Calif.

**ENDORSEMENT (To be made only by the Company at its Home Office in Boston, Massachusetts)**

### VARIABLE LOAN INTEREST RATE

We will annually determine the Loan Interest Rate for this policy. This Rate will apply to all indebtedness outstanding during the policy year next following the date of determination. The rate we determine will not exceed the higher of: (a) the "Published Monthly Average" for the calendar month which is two months before the month in which the date of determination occurs; and (b) 5%.

The "Published Monthly Average" means Moody's Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor thereto.

If the "Published Monthly Average" is no longer published, we reserve the right to select a substitute that we deem appropriate, subject to applicable law or regulation.

James J. Callahan
Secretary

U911

 **VARIABLE LIFE INSURANCE COMPANY**

---

**ENDORSEMENT (To be made only by the Company at its Home Office in Boston, Massachusetts)**

1. Any notice of a change in Owner or Beneficiary will take effect when notice of the change is received at our Home Office.

2. As used in this policy in connection with the payment of any death benefit, the words "due proof" are defined as: (a) a copy of a certified death certificate, (b) a copy of a certified decree of a court of competent jurisdiction as to the finding of death, (c) a written statement by a doctor of medicine who attended the deceased during his last illness, or (d) any proof satisfactory to us.

*James J. Callahan*
Secretary

VL916

JOHN HANCOCK   VARIABLE LIFE INSURANCE COMPANY

---

**ENDORSEMENT (To be made only by the Company at its Home Office in Boston, Massachusetts)**

---

At any time you may apply the Surrender Value to purchase a Single Premium Whole Life Insurance policy from the John Hancock Mutual Life Insurance Company, in accordance with the table of maximum rates shown on page 2 of this endorsement. We may require evidence of insurability for any amount of insurance in excess of the Death Benefit under this policy on the date the Surrender Value is applied.

*James J. Callolian*

**Secretary**

U915A

## MAXIMUM SINGLE PREMIUM [+]PER $1,000 SUM INSURED

| AGE[*] | MALE | FEMALE | AGE[*] | MALE | FEMALE | AGE[*] | MALE | FEMALE |
|---|---|---|---|---|---|---|---|---|
| 0 | 96.37 | 90.71 | 35 | 261.76 | 249.29 | 70 | 713.01 | 696.12 |
| 1 | 93.07 | 87.41 | 36 | 270.96 | 258.09 | 71 | 726.40 | 710.14 |
| 2 | 94.99 | 89.33 | 37 | 280.48 | 267.20 | 72 | 739.56 | 723.98 |
| 3 | 97.23 | 91.57 | 38 | 290.33 | 276.65 | 73 | 752.51 | 737.65 |
| 4 | 99.65 | 93.99 | 39 | 300.49 | 286.40 | 74 | 765.29 | 751.14 |
| 5 | 102.24 | 96.58 | 40 | 310.93 | 296.45 | 75 | 777.97 | 764.51 |
| 6 | 104.99 | 99.33 | 41 | 321.47 | 306.61 | 76 | 790.54 | 777.32 |
| 7 | 107.92 | 102.26 | 42 | 332.28 | 317.06 | 77 | 802.92 | 789.96 |
| 8 | 111.03 | 105.09 | 43 | 343.40 | 327.83 | 78 | 815.09 | 802.39 |
| 9 | 114.31 | 108.13 | 44 | 354.78 | 338.87 | 79 | 826.91 | 814.51 |
| 10 | 117.76 | 111.34 | 45 | 366.47 | 350.22 | 80 | 838.30 | 826.30 |
| 11 | 121.38 | 114.73 | 46 | 378.43 | 361.85 | 81 | 849.26 | 837.76 |
| 12 | 125.14 | 118.27 | 47 | 390.66 | 373.76 | 82 | 859.76 | 848.89 |
| 13 | 129.04 | 121.96 | 48 | 403.17 | 385.95 | 83 | 869.85 | 859.69 |
| 14 | 133.06 | 125.79 | 49 | 415.91 | 398.39 | 84 | 879.54 | 870.17 |
| 15 | 137.21 | 129.75 | 50 | 428.91 | 411.10 | 85 | 888.92 | 880.34 |
| 16 | 141.49 | 133.87 | 51 | 442.11 | 424.03 | 86 | 898.04 | 890.24 |
| 17 | 145.87 | 138.10 | 52 | 455.53 | 437.21 | 87 | 906.96 | 899.89 |
| 18 | 150.40 | 142.49 | 53 | 469.16 | 450.61 | 88 | 915.77 | 909.36 |
| 19 | 155.06 | 147.01 | 54 | 482.99 | 464.24 | 89 | 924.53 | 918.72 |
| 20 | 159.91 | 151.71 | 55 | 496.97 | 478.05 | 90 | 933.33 | 928.06 |
| 21 | 164.93 | 156.58 | 56 | 511.14 | 492.06 | – | – | – |
| 22 | 170.14 | 161.61 | 57 | 525.44 | 506.24 | – | – | – |
| 23 | 175.58 | 166.86 | 58 | 539.87 | 520.57 | – | – | – |
| 24 | 181.24 | 172.30 | 59 | 554.39 | 535.03 | – | – | – |
| 25 | 187.14 | 177.96 | 60 | 568.99 | 549.60 | – | – | – |
| 26 | 193.32 | 183.88 | 61 | 583.63 | 564.25 | – | – | – |
| 27 | 199.75 | 190.02 | 62 | 598.32 | 579.00 | – | – | – |
| 28 | 206.45 | 196.43 | 63 | 612.99 | 593.78 | – | – | – |
| 29 | 213.45 | 203.11 | 64 | 627.66 | 608.60 | – | – | – |
| 30 | 220.71 | 210.05 | 65 | 642.26 | 623.40 | – | – | – |
| 31 | 228.28 | 217.28 | 66 | 656.77 | 638.16 | – | – | – |
| 32 | 236.16 | 224.81 | 67 | 671.16 | 652.87 | – | – | – |
| 33 | 244.36 | 232.65 | 68 | 685.36 | 667.46 | – | – | – |
| 34 | 252.89 | 240.80 | 69 | 699.32 | 681.88 | – | – | – |

[+]Add $150 per policy if Sum Insured is $2,500 or more.
Add $60 to per thousand rate if Sum Insured is less than $2,500.
Not available for Sum Insured less than $1,000

[*]Nearest birthday when Policy Value Applied

Communications about this policy may be sent to the Company at John Hancock Place, Boston, Massachusetts 02117

Flexible Premium Adjustable Life
Death Benefit payable at death before Maturity Date
Policy Value payable on Maturity Date if Insured is then living
Not eligible for dividends

Form 85-90

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA 92101-3827<br>BRANCH NAME: Central | |

| PLAINTIFF(S): Rebeca Palermino |
|---|
| DEFENDANT(S): John Hancock Life Insurance Co et.al. |
| SHORT TITLE: PALERMINO VS. JOHN HANCOCK LIFE INSURANCE CO |

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS<br>(CRC 3.221) | CASE NUMBER:<br>37-2007-00067531-CU-IC-CTL |
|---|---|

Judge: William R. Nevitt, Jr.                                     Department: C-64

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution process. Selection of any of these options will not delay any case management time-lines.

☐ Court-Referred Mediation Program                    ☐ Court-Ordered Nonbinding Arbitration

☐ Private Neutral Evaluation                          ☐ Court-Ordered Binding Arbitration (Stipulated)

☐ Private Mini-Trial                                  ☐ Private Reference to General Referee

☐ Private Summary Jury Trial                          ☐ Private Reference to Judge

☐ Private Settlement Conference with Private Neutral  ☐ Private Binding Arbitration

☐ Other (specify): _____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate: (mediation & arbitration only) _____

Date: _____              Date: _____

_____              _____
Name of Plaintiff                               Name of Defendant

_____              _____
Signature                                       Signature

_____              _____
Name of Plaintiff's Attorney                    Name of Defendant's Attorney

_____              _____
Signature                                       Signature

(Attach another sheet if additional names are necessary). It is the duty of the parties to notify the court of any settlement pursuant to California Rules of Court, 3.1385. Upon notification of the settlement the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court and all un-served, non-appearing or actions by names parties are dismissed.

**IT IS SO ORDERED.**

Dated: 05/30/2007

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 01-07)        **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**        Page: 1

3

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

CASE NUMBER: 37-2007-00067531-CU-IC-CTL        CASE TITLE: Palermino vs. John Hancock Life Insurance Co

## NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE

You are required to serve a copy of this Notice to Litigants/ADR Information Package and a copy of the blank Stipulation to Alternative Dispute Resolution Process (received from the Civil Business Office at the time of filing) with a copy of the Summons and Complaint on all defendants in accordance with San Diego Superior Court Rule 2.1.5, Division II and CRC Rule 201.9.

## ADR POLICY

It is the policy of the San Diego Superior Court to strongly support the use of Alternative Dispute Resolution ("ADR") in all general civil cases. The court has long recognized the value of early case management intervention and the use of alternative dispute resolution options for amenable and eligible cases. The use of ADR will be discussed at all Case Management Conferences. It is the court's expectation that litigants will utilize some form of ADR – i.e. the court's mediation or arbitration programs or other available private ADR options as a mechanism for case settlement before trial

## ADR OPTIONS

**1) CIVIL MEDIATION PROGRAM:** The San Diego Superior Court Civil Mediation Program is designed to assist parties with the early resolution of their dispute. All general civil independent calendar cases, including construction defect, complex and eminent domain cases are eligible to participant in the program. Limited civil collection cases are not eligible at this time. San Diego Superior Court Local Rule 2.31, Division II addresses this program specifically. Mediation is a non- binding process in which a trained mediator 1) facilitates communication between disputants, and 2) assists parties in reaching a mutually acceptable resolution of all or part of their dispute. In this process, the mediator carefully explores not only the relevant evidence and law, but also the parties' underlying interests, needs and priorities. The mediator is not the decision-maker and will not resolve the dispute – the parties do. Mediation is a flexible, informal and confidential process that is less stressful than a formalized trial. It can also save time and money, allow for greater client participation and allow for more flexibility in creating a resolution.

**Assignment to Mediation, Cost and Timelines:** Parties may stipulate to mediation at any time up to the CMC or may stipulate to mediation at the CMC. Mediator fees and expenses are split equally by the parties, unless otherwise agreed. Mediators on the court's approved panel have agreed to the court's payment schedule for county-referred mediation: $150.00 per hour for each of the first two hours and their individual rate per hour thereafter. Parties may select any mediator, however, the court maintains a panel of court-approved mediators who have satisfied panel requirements and who must adhere to ethical standards. All court-approved mediator fees and other policies are listed in the Mediator Directory at each court location to assist parties with selection. **Discovery:** Parties do not need to conduct full discovery in the case before mediation is considered, utilized or referred. **Attendance at Mediation:** Trial counsel, parties and all persons with full authority to settle the case must personally attend the mediation, unless excused by the court for good cause.

**2) JUDICIAL ARBITRATION:** Judicial Arbitration is a binding or non-binding process where an arbitrator applies the law to the facts of the case and issues an award. The goal of judicial arbitration is to provide parties with an adjudication that is earlier, faster, less formal and less expensive than trial. The arbitrator's award may either become the judgment in the case if all parties accept or if no trial de novo is requested within the required time. Either party may reject the award and request a trial de novo before the assigned judge if the arbitration was non-binding. If a trial de novo is requested, the trial will usually be scheduled within a year of the filing date.

**Assignment to Arbitration, Cost and Timelines:** Parties may stipulate to binding or non-binding judicial arbitration or the judge may order the matter to arbitration at the case management conference, held approximately 150 days after filing, if a case is valued at under $50,000 and is "at issue". The court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. In addition, if parties select an arbitrator from the court's panel, the court will pay the arbitrator's fees. Superior Court

**3) SETTLEMENT CONFERENCES:** The goal of a settlement conference is to assist the parties in their efforts to negotiate a settlement of all or part of the dispute. Parties may, at any time, request a settlement conference before the judge assigned to their case; request another assigned judge or a pro tem to act as settlement officer; or may privately utilize the services of a retired judge. The court may also order a case to a mandatory settlement conference prior to trial before the court's assigned Settlement Conference judge.

**4) OTHER VOLUNTARY ADR:** Parties may voluntarily stipulate to private ADR options outside the court system including private binding arbitration, private early neutral evaluation or private judging at any time by completing the "Stipulation to Alternative Dispute Resolution Process" which is included in this ADR package. Parties may also utilize mediation services offered by programs that are partially funded by the county's Dispute Resolution Programs Act. These services are available at no cost or on a sliding scale based on need. For a list of approved DRPA providers, please contact the County's DRPA program office at (619) 238-2400.

**ADDITIONAL ADR INFORMATION:** For more information about the Civil Mediation Program, please contact the Civil Mediation Department at (619) 515-8908. For more information about the Judicial Arbitration Program, please contact the Arbitration Office at (619) 531-3818. For more information about Settlement Conferences, please contact the Independent Calendar department to which your case is assigned. Please note that staff can only discuss ADR options and cannot give legal advice.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:     330 West Broadway
MAILING ADDRESS:   330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:   Central
TELEPHONE NUMBER:   (619) 685-6026

PLAINTIFF(S) / PETITIONER(S):     Rebeca Palermino

DEFENDANT(S) / RESPONDENT(S): John Hancock Life Insurance Co et.al.

PALERMINO VS. JOHN HANCOCK LIFE INSURANCE CO

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2007-00067531-CU-IC-CTL |
|---|---|

Judge:  William R. Nevitt, Jr.                                    Department: C-64

**COMPLAINT/PETITION FILED:** 05/30/2007

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT).

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

**TIME STANDARDS:** The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil consists of all cases except: Small claims appeals, petitions, and unlawful detainers.

**COMPLAINTS:** Complaints must be served on all named defendants, and a CERTIFICATE OF SERVICE (SDSC CIV-345) filed within 60 days of filing. This is a mandatory document and may not be substituted by the filing of any other document.

**DEFENDANT'S APPEARANCE:** Defendant must generally appear within 30 days of service of the complaint. (Plaintiff may stipulate to no more than a 15 day extension which must be in writing and filed with the Court.)

**DEFAULT:** If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.

THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO LITIGATION, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. MEDIATION SERVICES ARE AVAILABLE UNDER THE DISPUTE RESOLUTION PROGRAMS ACT AND OTHER PROVIDERS. SEE ADR INFORMATION PACKET AND STIPULATION.

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION PURSUANT TO CCP 1141.10 AT THE CASE MANAGEMENT CONFERENCE. THE FEE FOR THESE SERVICES WILL BE PAID BY THE COURT IF ALL PARTIES HAVE APPEARED IN THE CASE AND THE COURT ORDERS THE CASE TO ARBITRATION PURSUANT TO CCP 1141.10. THE CASE MANAGEMENT CONFERENCE WILL BE CANCELLED IF YOU FILE FORM SDSC CIV-359 PRIOR TO THAT HEARING

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| William E. O'Nell, Esq. (SBN185756)<br>LAW OFFICE OF WILLIAM E. O'NELL<br>101 West Broadway, Suite 810<br>San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 702-7636    FAX NO. *(Optional):* (619) 702-7639<br>E-MAIL ADDRESS *(Optional):* william@weolaw.com<br>ATTORNEY FOR *(Name):* Plaintiff, REBECA PALERMINO | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: HALL OF JUSTICE

PLAINTIFF/PETITIONER: REBECA PALERMINO

DEFENDANT/RESPONDENT: JOHN HANCOCK LIFE INS. CO., ET AL.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2007-67531-CU-IC-CTL |
|---|---|

TO *(insert name of party being served):* John Hancock, a business of unknown form

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing: 6-20-07

William E. O'Nell, Esq.
_____
(TYPE OR PRINT NAME)

►_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [✓]  A copy of the summons and of the complaint.
2. [✓]  Other *(specify):*
     STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION PROCESS;
     NOTICE TO LITIGANTS/ADR INFORMATION PACKAGE; AND
     NOTICE OF CASE ASSIGNMENT.

*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

►_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

---

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]     **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**
Page 1 of 1
Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

American LegalNet, Inc.
www.USCourtForms.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

1

No. _____

John K. Kirby, State Bar No. 104590
Sarah Valentine, State Bar No. 157827
BURNHAM BROWN
A Professional Law Corporation
P.O. Box 119
Oakland, California 94604
---
1901 Harrison Street, 11th Floor
Oakland, California 94612
Telephone:    (510) 444-6800
Facsimile:     (510) 835-6666

Attorneys for Defendants
JOHN HANCOCK LIFE INSURANCE CO.; JOHN
HANCOCK VARIABLE LIFE INSURANCE CO.; JOHN
HANCOCK FUNDS, INC.; JOHN HANCOCK FUNDS
LLC; JOHN HANCOCK SIGNATURE SERVICES, INC.;
JOHN HANCOCK FINANCIAL SERVICES, INC.;
SIGNATOR INVESTORS, INC.; JOHN HANCOCK

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

UNLIMITED JURISDICTION

| | |
|---|---|
| REBECA PALERMINO,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HANCOCK LIFE INSURANCE CO., a Massachusetts Corporation formerly known as JOHN HANCOCK MUTUAL LIFE INSURANCE CO.; JOHN HANCOCK VARIABLE LIFE INSURANCE CO., a Massachusetts Corporation; JOHN HANCOCK FUNDS, INC., a Delaware Corporation; JOHN HANCOCK FUNDS LLC; JOHN HANCOCK SIGNATURE SERVICES, INC., a Delaware Corporation formerly known as JOHN HANCOCK INVESTOR SERVICES, INC. AND JOHN HANCOCK FUND SERVICES, INC.; JOHN HANCOCK FINANCIAL SERVICES, INC., a Delaware Corporation; SIGNATOR INVESTORS, INC., a Delaware Corporation formerly known as JOHN HANCOCK DISTRIBUTORS, INC.; JOHN HANCOCK, a business of unknown form; and DOES 1-100, Inclusive,<br><br>Defendants. | No. 37-2007-00067531-CU-IC-CTL<br><br>DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO.'S; JOHN HANCOCK VARIABLE LIFE INSURANCE CO.'S; JOHN HANCOCK FUNDS, INC.'S; JOHN HANCOCK FUNDS LLC'S; JOHN HANCOCK SIGNATURE SERVICES, INC.'S; JOHN HANCOCK FINANCIAL SERVICES, INC.'S; SIGNATOR INVESTORS, INC.'S AND JOHN HANCOCK'S ANSWER TO PLAINTIFF'S COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; FRAUD; NEGLIGENT MISREPRESENTATION; BREACH OF CONTRACT; AND VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND DEMAND FOR JURY<br><br>ASSIGNED TO JUDGE WILLIAM R. NEVITT, JR., DEPT. C-64<br><br>Complaint Filed: May 30, 2007 |

/ / /

/ / /

/ / /

1

1   Defendants JOHN HANCOCK LIFE INSURANCE CO., sued herein as the formerly

2   known JOHN HANCOCK MUTUAL LIFE INSURANCE CO.; JOHN HANCOCK

3   VARIABLE LIFE INSURANCE CO.; JOHN HANCOCK FUNDS, INC.; JOHN HANCOCK

4   FUNDS LLC; JOHN HANCOCK SIGNATURE SERVICES, INC. sued herein as the formerly

5   known JOHN HANCOCK INVESTOR SERVICES, INC. AND JOHN HANCOCK FUND

6   SERVICES, INC.; JOHN HANCOCK FINANCIAL SERVICES, INC.; SIGNATOR

7   INVESTORS, INC., sued herein as the formerly known JOHN HANCOCK DISTRIBUTORS,

8   INC., and JOHN HANCOCK, a business of unknown form (collectively "JOHN HANCOCK")

9   answering the complaint of Plaintiff REBECA PALERMINO ("Plaintiff") deny generally and

10  specifically each and every, all and singular, the allegations of said complaint, and each cause of

11  action thereof, and further deny that Plaintiff has been damaged in any sum or sums or at all.

12      WHEREFORE, this answering Defendant demands a jury and prays for judgment as

13  hereinafter set forth.

## AFFIRMATIVE DEFENSES

15      As a first affirmative defense to each cause of action of the complaint, neither Plaintiff's

16  complaint, nor any cause of action set forth therein, states facts sufficient to constitute a cause of

17  action against JOHN HANCOCK.

18      As a second affirmative defense to each cause of action of the complaint, any and all

19  losses sustained by Plaintiff as a result of the occurrences alleged in her complaint were

20  proximately caused in full or in part by the negligence or fault of persons or entities other than

21  JOHN HANCOCK, and for whom JOHN HANCOCK is not responsible.  Such loss, if any,

22  must be apportioned according to the fault of the parties.

23      As a third affirmative defense to each cause of action of the complaint, JOHN

24  HANCOCK denies that Plaintiff has sustained any injury by any act committed or omitted by

25  JOHN HANCOCK.  If, however, it is established that Plaintiff has suffered such injury and that

26  JOHN HANCOCK is liable in any amount to Plaintiff, JOHN HANCOCK alleges that such

27  injury was proximately caused or contributed to by the intervening negligence or other wrongful

28  acts of Plaintiff or her agents, and that any such injury must be apportioned according to the fault

2

1   of the parties.

2        As a fourth affirmative defense to each cause of action of the complaint, by reason of

3   Plaintiff's comparative or contributory fault, Plaintiff has waived and relinquished, or is

4   estopped to assert, every claim asserted in the complaint.

5        As a fifth affirmative defense to each cause of action of the complaint, each and every act

6   or statement done or made by JOHN HANCOCK, or by any agent or employees, with reference

7   to Plaintiff, was privileged as a good faith assertion of JOHN HANCOCK's legal and

8   contractual rights.

9        As a sixth affirmative defense to each cause of action of the complaint, Plaintiff's claims

10   are precluded by the parol evidence rule.

11        As a seventh affirmative defense to each cause of action of the complaint, Plaintiff's

12   claims are barred by principles of unjust enrichment.

13        As an eighth affirmative defense to each cause of action of the complaint, Plaintiff has

14   not stated facts upon which to base an award of punitive damages under California Code of Civil

15   Procedure section 3294.

16        As a ninth affirmative defense to each cause of action of the complaint, Plaintiff's

17   complaint, and each cause of action therein, is barred by the applicable statute of limitations,

18   including, but not limited to, Civil Procedure Code sections 337 through 340.

19        As a tenth affirmative defense to each cause of action of the complaint, there was an

20   accord and satisfaction applicable to, among other things, all the claims and causes of action

21   alleged in Plaintiff's complaint.

22        As an eleventh affirmative defense to each cause of action of the complaint, Plaintiff is

23   not entitled to punitive damages.

24        As a twelfth affirmative defense to each cause of action of the complaint, Plaintiff has

25   failed to state facts sufficient to state a cause of action for fraud against JOHN HANCOCK.

26        As a thirteenth affirmative defense to each cause of action of the complaint, Plaintiff's

27   remedy for an alleged breach of contract is limited by Civil Code sections 3300 and/or 3302.

28        As a fourteenth affirmative defense to each cause of action of the complaint, Plaintiff

1    lacks standing to assert any of the causes of action alleged in her complaint.

2        As a fifteenth affirmative defense to each cause of action of the complaint, Victoria

3    Mattarocchia (nee Chavez), the owner of the JOHN HANCOCK policies at issue, failed to

4    comply with terms of the policies with respect to requesting a change of beneficiary.

5        As a sixteenth affirmative defense to each cause of action of the complaint, Plaintiff is

6    barred and estopped by the equitable doctrine of laches from seeking or obtaining any recovery

7    against JOHN HANCOCK by reason of her complaint.

8        WHEREFORE, JOHN HANCOCK prays for judgment against Plaintiff as follows:

9    1.    That Plaintiff take nothing by reason of her unverified complaint on file herein;

10    2.    That JOHN HANCOCK be awarded its costs of suit herein; and

11    3.    That the court grant such and other further relief as it may deem just and proper.

12

13    DATED: July 23, 2007           BURNHAM BROWN

14

15                     By_____

16                      SARAH VALENTINE

                       Attorneys for Defendant

17                      JOHN HANCOCK LIFE INSURANCE CO.;

                       JOHN HANCOCK VARIABLE LIFE

18                      INSURANCE CO.; JOHN HANCOCK FUNDS,

                       INC.; JOHN HANCOCK FUNDS LLC; JOHN

19                      HANCOCK SIGNATURE SERVICES, INC.;

                       JOHN HANCOCK FINANCIAL SERVICES,

20                      INC.; SIGNATOR INVESTORS, INC.; JOHN

                       HANCOCK

21

22

23

24    813411

25

26

27

28

DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO., ET AL.'S
ANSWER TO PLAINTIFF'S COMPLAINT          No. 37-2007-
                                          00067531-CU-IC-CTL

| Re: | Rebeca Palermino v. John Hancock Life Ins. Co., et al. |
| Court: | San Diego County Superior - Unlimited |
| Action No: | 37-2007-00067531-CU-IC-CTL |

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to the above-entitled action, and am an employee of Burnham Brown whose business address is 1901 Harrison Street, 11th Floor, Oakland, Alameda County, California 94612 (mailing address: Post Office Box 119, Oakland, California 94604).

On July 23, 2007, I served the following document(s) in the following manner(s):

DEFENDANTS JOHN HANCOCK LIFE INSURANCE CO.'S; JOHN HANCOCK VARIABLE LIFE INSURANCE CO.'S; JOHN HANCOCK FUNDS, INC.'S; JOHN HANCOCK FUNDS LLC'S; JOHN HANCOCK SIGNATURE SERVICES, INC.'S; JOHN HANCOCK FINANCIAL SERVICES, INC.'S; SIGNATOR INVESTORS, INC.'S AND JOHN HANCOCK'S ANSWER TO PLAINTIFF'S COMPLAINT FOR NEGLIGENCE; BREACH OF FIDUCIARY DUTY; FRAUD; NEGLIGENT MISREPRESENTATION; BREACH OF CONTRACT; AND VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING AND DEMAND FOR JURY

☒    **MAIL:** By placing the document(s) listed above in a sealed envelope with postage thereon, in the United States mail at Oakland, California, addressed as set forth below.

☐    **FACSIMILE:** By transmitted a true copy, via facsimile electronic equipment transmission (fax) to the office(s) of the addressee(s) at the fax number(s) below. The number of pages transmitted (including the Proof of Service Form) was

☐    **PERSONAL DELIVERY:** By personally delivering to and leaving a true copy thereof with the following person(s) at the following address(es) on the date set forth above.

| William E. O'Nell<br>Law Office of William E. O'Nell<br>101 West Broadway, Suite 810<br>San Diego, CA 92101<br>Tel: 619.702.7636; Fax: 619.702.7639 | Attorneys for Plaintiff Rebeca Palermino |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATE:          July 23, 2007

_Phyllis Best_
Phyllis Best

814687

---

PROOF OF SERVICE                         CASE NO. 37-2007-00067531-CU-IC-CTL

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

FILED

07 JUL 24  PM 12: 07

sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**I (a) PLAINTIFFS**
Rebeca Palermino

**DEFENDANTS**
John Hancock Life Ins Co; John Hancock
Variable Life Ins Co; John Hancock Funds Inc;
John Hancock Funds LLC; John Hancock Signature
Services Inc; John Hancock Financial Services Inc;
Signator Investors Inc; John Hancock

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** San Diego
**PLAINTIFF** California
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Suffolk County
(IN U.S. PLAINTIFF CASES ONLY)                              Massachusetts

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
William E. O'Nell
101 West Broadway, Suite 810
San Diego, CA 92101
619.702.7636

**ATTORNEYS (IF KNOWN)**
Susan Firtch
Burnham Brown; 1901 Harrison St., Suite 1100
Oakland, CA 94612
510.444.6800

'07 CV  1345 DMS (BLM)

BY FAX

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**
(For Diversity Cases Only)

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

28 U.S.C. Section 1332

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instruments | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodation | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☐ 1 Original Proceeding   ☒ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23   **DEMAND $** 175,000   Check YES only if demanded in complaint   JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See instructions):** JUDGE _____ Docket Number _____

DATE July 23, 2007   SIGNATURE OF ATTORNEY OF RECORD Susan E. Firtch

PAID $350 - 7/24/07  BH RCPT# 140788

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 140788      — BH

July 24. 2007
12:06:11

Civ Fil Non-Pris
USAO #.: 07CV1345 CIVIL FILING
Judge..: DANA M SABRAW
Amount.:
Check#.: BC# D3100660        $350.00 CK

Total-> $350.00

FROM: PALERMINO V. JOHN HANCOCK LIFE
CIVIL FILING